## Brew, Appellant, *v.* Sharer.

*Tax sales — Purchase by commissioners — Redemption — Acts of March* 13, 1815, 6 *Sm. L.* 299, *April* 29, 1844, *P. L.* 486, *March* 22, 1850, *P. L.* 305, *May* 13, 1879, *P. L.* 55, *June* 3, 1885, *P. L.* 71, *July* 8, 1885, *P. L.* 268 *and May* 9, 1889, *P. L.* 141—*Statutes—Repeal—Seated and unseated lands.*

1. The Act of July 8, 1885, P. L. 268, entitled "An Act relative to the purchase of lands by county commissioners at sales thereof for arrearages of taxes," applies to both seated and unseated lands.

2. The Act of July 8, 1885, P. L. 268, repeals the Act of March 13, 1815, 6 Sm. L. 299, entitled "An Act to amend the act entitled 'An act directing the mode of selling unseated lands for taxes, and for other purposes.' "

3. Under the Act of May 9, 1889, P. L. 141, which amended the third section of the Act of July 8, 1885, P. L. 268, the right of redemption of lands sold for taxes and bought by the county commissioners remains in the real owner for the period of two years only after the sale.

4. Where the commissioners have placed the lands purchased by them upon the assessment lists, and permit them to be assessed for taxes and sold by the treasurer, such action may be irregular and possibly not vest a good title in the purchaser, but it does not enure to the benefit of the original owner if he has permitted more than two years from the date of the sale to the commissioners to elapse without having made any effort to redeem the land.

Submitted Oct. 27, 1909. Appeal, No. 48, Oct. T., 1909, by plaintiff, from judgment of C. P. Centre Co., Nov. T., 1903, No. 92, on verdict for defendants in case of George T. Brew v. Christian Sharer, et al. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Ejectment for land in Snowshoe township. Before SAVIDGE, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[Construing the act of July 8, 1885, relative to the purchasing of the land of the county commissioners, etc., as applicable, according to the words of the act, to any tract of land sold for taxes and bidden in by the commissioners, whether the same be sold as seated or unseated, and that act having been amended by the act of May 9, 1889, so as to limit the time for redemption to two years from the date of sale, we conclude under the authority of Diamond Coal Company v. Fisher, 19 Pa. 267, that Jackson, the purchaser at the former commissioners' sale, and the owner of the tract of land at the time of the sale to the commissioners had until June 13, 1900, within which to redeem from this treasurer's sale to the commissioners.] [2]

[A few days before that time expired, as you will have noticed, there was this treasurer's sale of 1900 to Christian Sharer. This sale of 1900, to quote the words of Judge Lourie in the Diamond Coal Company against Fisher, was effectual, invested in Christian Sharer the title which the county acquired by the sale of 1898, and that title became perfect and absolute in Christian Sharer in 1900, on the failure of the original owner, George W. Jackson, to redeem according to law, namely, on or before June 11, 1900. When Sharer bought at treasurer's sale in 1900, on June 11, Jackson had remaining just two days within which to redeem. After that his right of redemption was gone.] [3]

[And as a matter of practice, commissioners usually do permit redemptions where they still own the property; but having it assessed and subsequently sold by the county treasurer to another party, that party at once acquires what the Supreme Court has said is a perfect and absolute title, subject only to the right of the former owner to redeem the time allowed him by law. Now, when Christian Sharer bought this property, he presumably knew that the original owner had but two days to redeem.] [4]

[The county, under the law, had no right to redeem—only the former owner could redeem—and the county could not extend to that former owner any other privileges than the law gave him, because it would be prejudicing the rights of Christian Sharer, the subsequent purchaser at treasurer's sale; the rights to have his inchoate title perfected beyond a peradventure at the expiration of the two years from the time of the sale to the commissioners.] [5]

[County commissioners may give away their own rights if they are so minded, or the rights of the county they represent, so far as to permit—because no harm comes from it—so as to permit a former owner to redeem after the time allowed him by law has expired, but they cannot do that where the rights of a subsequent purchaser are affected. Hence I say to you that your verdict in this case should be for the defendant.] [6]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (2–6) above instructions quoting them and (7) in giving binding instructions for defendants.

*Charles P. Hewes*, for appellant, cited: Kirkpatrick v. Mathiot, 4 W. & S. 251; Huston v. Foster, 1 Watts, 477; Shalemiller v. McCarty, 55 Pa. 186; Herron v. Murphy, 22 W. N. C. 181; Kunes v. McCloskey, 115 Pa. 461; Jenks v. Wright, 61 Pa. 410; Steiner v. Coxe, 4 Pa. 13.

*H. C. Quigley* and *James A. B. Miller*, for appellees: Diamond Coal Co. v. Fisher, 19 Pa. 267; Cobb v. Barclay, 9 Pa. Superior Ct. 573.

Opinion by Beaver, J., March 3, 1910:

George W. Jackson in his lifetime became the purchaser at the treasurer's sale of unseated lands, August 22, 1894, of a body of lands assessed as "Copenhaver & Whitcomb," surveyed originally upon warrants in the names of Casper Lawrence and Samuel Chestnut, respectively, containing in the aggregate 776 acres. He paid the taxes assessed upon these lands for the years 1894 and 1895. The taxes for 1896 and 1897 being unpaid, they were thereupon sold to the county on June 13, 1898, as assumed by the court below at the trial and acquiesced in here at the argument. The commissioners had these lands assessed for taxes for the years 1898 and 1899 and for those taxes they were sold on June 11, 1900, to Christian Sharer, one of the defendants. No attempt at redemption was made from the sale to the commissioners in 1898 until May 31, 1902, when the present plaintiff, who had acquired the interest of the heirs of Jackson, made what the appellant calls "a permissive redemption allowed by the county commissioners from the sale of June 13th, 1898," and it is alleged that "on the same day Brew also paid to the County Treasurer sufficient money to redeem the lands from the sale of June 11th, 1900, to Christian Sharer."

The plaintiff admits that two separate and distinct portions of this body of lands were seated at the time of the sale and were not legally included therein, and admits that he should not recover for portions of said warrants, amount-

ing to 100 acres, assessed to George Vaughn, and fifty-five acres assessed to A. Stevens' estate respectively.

The appellant argues that, "This case turns upon a single point, i. e., the power of the county to redeem its lands sold by the county treasurer for unpaid taxes, or to reinstate a former owner in title so as to permit him to redeem from a subsequent treasurer's sale. By affirming all our points but the last, the court below held that we would be entitled to recover, if it were not for the plaintiff's lack of power to redeem. If, therefore, the court below is in error in its direction to the jury, there is nothing for the latter to consider, and the appellate court should enter judgment in favor of the appellant for the land described in the writ, less the 100 acres assessed to George Vaughn and the 55 acres assessed to the A. Stevens' estate."

The plaintiff claiming through the heirs of Jackson, the court below held, as assigned for error by the appellant in his second specification: "Construing the act of July 8th, 1885, relative to the purchasing of the land of the County Commissioners, etc., as applicable, according to the words of the act, to any tract of land sold for taxes and bidden in by the Commissioners, whether the same be sold as seated or unseated, and that act having been amended by the act of May 9th, 1889, so as to limit the time for redemption to two years from the date of sale, we conclude, under the authority of Diamond Coal Company v. Fisher, 19 Pa. 267, that Jackson, the purchaser at the former commissioners' (?) (treasurer's) sale, and the owner of the tract of land at the time of the sale to the Commissioners, had until June 13th, 1900, within which to redeem from this treasurer's sale to the commissioners."

This specification of error raises the principal question discussed by the appellant in the case. In the fourth section of the Act of March 13, 1815, 6 Sm. L. 299, entitled, "An act to amend the act entitled, 'An act directing the mode of selling unseated lands for taxes, and for other purposes,'" it was provided: "That if the owner or owners of lands sold as aforesaid, shall make, or cause to be made, within two years after

such sale, an offer or legal tender of the amount of the taxes for which the said lands were sold, and the costs, together with the additional sum of twenty-five per cent on the same, to the county treasurer, who is hereby authorized and required to receive and receipt for the same, and to pay it over to the said purchaser upon demand, and if it shall be refused by the said treasurer, or in case the owner or owners of lands so sold, shall have paid the taxes due on them, previously to the sale, then, and in either of these cases, said owner or owners shall be entitled to recover the same by due course of law." By the fifth section of said act, it was provided: "That, if any tract of unseated land, hereafter to be sold for taxes due at this time, or which shall hereafter be imposed, shall not have bidden for it a sum equal to the whole amount of taxes for which it shall have been advertised, and the costs accrued, then, and in that case, it shall be the duty of the commissioners of the proper county, or any one of them, to bid off the same, and a deed shall thereupon be made by the treasurer to the commissioners for the time being, and to their successors in office, to and for the use of the proper county, and it shall be the duty of the commissioners to provide a book, wherein shall be entered the name of the person as whose estate the same shall have been sold, the quantity of land, and the amount of taxes it was sold for, and every such tract of land shall not thereafter, so long as the same shall remain the property of the county, be charged in the duplicate of the proper collector; but for five years next following such sale, if it shall so long remain unredeemed, the commissioners shall, in separate columns in the same book, charge every such tract of land with reasonable county and road tax, according to the quality of the said land, not exceeding in any case the sum of six dollars for every hundred acres."

By the sixth section it was further provided: "That the right of redemption shall remain in the real owner of such land for five years after such sale, and on paying the treasurer of the county all the taxes and costs due thereon at the time of sale, and interest therefor for the same time, and also the

taxes which shall have been assessed thereon from year to year after the sale, and interest of each assessment to be counted from the time it ought to have been paid, and on the production of the treasurer's receipt, the commissioners shall, by deed poll, indorsed on the back of the treasurer's deed to them, convey to the person who shall have been the owner of the land at the time of sale, or his legal representative, all the right and title which the county may have acquired under such sale as aforesaid; the moneys so received for road taxes shall be paid to the supervisors of the roads of the township within which such lands shall lie, on orders to be drawn by the commissioners on the treasurer, to be applied by them in making and repairing the roads and highways in their respective townships."

By the forty-first section of the Act of April 29, 1844, P. L. 486, entitled, "An act to reduce the state debt, and to incorporate the Pennsylvania Canal and Railroad Company," it was enacted: "That all real estate within this commonwealth on which personal property cannot be found sufficient to pay the taxes assessed thereon, and where the owner or owner thereof neglect or refuse to pay the said taxes, the collectors of the townships in which said lands lie, shall return the same to the commissioners of the several counties; and the said lands shall be sold as unseated lands are now sold, in satisfaction of the taxes due by the said owner or owners: Provided, that no sale shall be made of such lands for the purpose aforesaid, until the owner or owners thereof shall have refused or neglected to pay the taxes aforesaid, for the space of two years: Provided further, that the owner or owners of all such lands shall have the right to redeem them at any time within one year after receiving actual notice, from the treasurer of the county where such lands lie, that they have been sold, by paying the amount of taxes and costs due thereon, with interest from the time when said taxes fell due; and that so much of the act of the twenty-seventh of July, one thousand eight hundred and forty-two, as constitutes the associate judges of the several counties, members of the board of revision, be and the same is hereby repealed."

By the seventh section of the Act of March 22, 1850, P. L. 305, entitled, "An act to incorporate the borough of Leechburg, in the county of Armstrong; and relative to treasurers' sales," it was enacted, "That before any sale of lands shall hereafter be made by any county treasurer in pursuance of the forty-first section of an act entitled 'An act to reduce the state debt, and to incorporate the Pennsylvania railroad company,' passed the twenty-ninth day of April, one thousand eight hundred and forty-four, he shall give the same notice of sale as is now required by law for the sale of unseated lands."

By the Act of May 13, 1879, P. L. 55, entitled, "An act regulating the right of redemption of seated lands returned to the county commissioners and sold for nonpayment of taxes," it was enacted, "That, where seated real estate has been heretofore or shall be hereafter returned to the county commissioners of the proper county for nonpayment of taxes thereon, and has been or shall be sold in satisfaction of said taxes, the owner or owners of such real estate shall have the right to redeem the same within the same time and in the same manner as if the real estate were unseated and assessed and sold as unseated: Provided, That as to seated real estate heretofore sold such right of redemption shall not expire before the expiration of one year from the date of this act: And provided further, that no title by tax sale which shall have become absolute prior to the passage of this act shall be affected by its provisions."

Its second section provides: "This act shall not be so construed as to prevent the original owner or owners from showing that there was sufficient personal property on the real estate sold to pay all the taxes assessed thereon which might have been seized by the collector if he had used due diligence, and in such case the title of the original owner or owners shall not be doubted."

The third section provides for the repeal of so much of the forty-first section of the act approved April 29, 1844, as provides, "That the owner or owners of such seated real estate shall have the right to redeem them at any time within one

year after receiving actual notice from the treasurer of the county where such lands lie that they have been sold."

We have cited the acts of assembly relating to the redemption of seated and unseated lands existing at the time of certain legislation passed in relation thereto in 1885 for the reason that the appellant claims that the Act of July 8, 1885, entitled, "An act relative to the purchase of lands by county commissioners at sales thereof for arrearages of taxes," P. L. 268, cited by him, does not relate to unseated lands, but relates only to seated lands. There is, however, the Act of June 3, 1885, P. L. 71, which preceded the Act of July 8, 1885, P. L. 268, which may assist in its interpretation, and which provides, "That all sales of seated or unseated lands within this commonwealth which shall hereafter be made for arrearages of taxes due thereon, shall be held, deemed and taken to be valid and effective irrespective of the fact whether such lands were seated or unseated at the time of the assessment of such taxes," and this, we think, taken in connection with the language of the Act of July 8, 1885, P. L. 268, in which it is held that, "if any tract of land hereafter be sold for taxes," etc., makes it very clear that it was intended by the legislation of that year to make the provisions for the sale of both seated and unseated lands uniform, and these two acts of assembly read together in our opinion clearly do so, although the latter, as argued both by the court below and the appellee here, would undoubtedly in our view have done so, under the general language used "any tract of land." The last section of this act provides that, "All acts or parts of acts inconsistent herewith, or hereby supplied, be and the same are hereby repealed." In view of the fact that parts of the act of 1815 are omitted and some are changed as to essential elements thereof, we think this act is an implied repeal of the said act of assembly. So the law stood on July 8, 1885, and by the act passed on that day the right of redemption remained in the real owner of such land sold to the commissioners of the county for five years after sale, etc.

On May 9, 1889, P. L. 141, however, the third section of the Act of July 8, 1885, P. L. 268, was amended as follows:

"The right of redemption shall remain in the real owner of such land (any land) for two years after such sale, and on paying the treasurer of the county all taxes and costs due thereon at the time of sale, and interest thereon, and also the taxes which have been levied and charged thereon from year to year after the sale, and interest thereon from the time such taxes ought to have been paid, and on production of the treasurer's receipt therefor, the commissioners shall by deed poll, indorsed on the back of the treasurer's deed to them, convey to the person who shall have been owner of the land at the time of the sale, or his legal representatives, all rights and title which the county may have acquired under such sale as aforesaid; and the moneys received shall be paid to the respective townships or districts in which such lands shall lie as they may be entitled thereto."

We are, therefore, clearly of opinion that the court below was entirely correct in holding that Jackson's right to redeem from the treasurer's sale, at which his interest in the lands in question was sold, was limited to two years and expired June 13, 1900, if he was correct as to the date of the sale; and whether strictly correct as to this fact or not is not a matter of practical consequence, inasmuch as, when the effort was made to redeem, namely, May 31, 1902, the time had long passed when, under any possible view of the facts, he had the right to redeem. At the expiration of two years from the date of the sale, Jackson's status was fixed by the law, and the commissioners had no power to reinstate his successor in title, so as to enable him to do what Jackson ought to have done within two years from the time of the sale to the commissioners. If they had power to do this, they could in effect have repealed the statutes which fixed both the rights and the duties of the owner whose title was absolutely lost at the end of the two years from the date of sale.

The action of the commissioners in placing the lands purchased by them upon the assessment lists and permitting them to be assessed for taxes and sold by the treasurer may have been irregular, but that can in no way inure to the

benefit of the plaintiff. He must recover upon the strength of his own title and not upon the want or weakness of that of his adversary, and whether or not, therefore, the treasurer's sale for taxes irregularly assessed vested title in Sharer is a matter of no consequence, so far as this inquiry is concerned.

As we view the whole case, the court properly directed the jury to find a verdict in favor of the defendants, and was not in error in entering judgment upon the verdict. The eight and tenth assignments of error are, therefore, overruled, and if there be technical error in some of the other assignments, based upon a misapprehension of fact, there is none which could in any way help the plaintiff, and a reversal thereon would be absolutely barren so far as it could in any way benefit him.

Judgment affirmed.