## Sugden v. Rothschild, Appellant.

Argued May 12, 1931. Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*C. A. Blass,* of *Craig & Blass,* for appellant.—It is the contention of counsel for defendant that the Act of May 21, 1913, P. L. 285, as amended by the Act of June 1, 1915, P. L. 660, abolished the distinction existing prior thereto between "unseated" and "seated" lands, in the method of collection of delinquent taxes and sale for nonpayment thereof: Peters v. Heasley, 10 Watts 208.

Assuming the land in question was "unseated" land at the time of assessment, levy and tax sale, under the Act of June 1, 1915, abolishing the distinction in the procedure in tax sales between "seated" and "unseated" lands, this sale was governed by the Act of April 3, 1804, P. L. 517, and March 13, 1815, P. L. 299, above referred

to, and the effect of the sale passes a good title, and the question as to whether a demand for payment of the tax was made upon the owner cannot be raised or considered as affecting the title of the purchaser at the tax sale: Ryan v. Bruhin, 88 Pa. Superior Ct. 61; Odegard v. Albert, 3 N. W. Rep. 526.

The word "town" is generic and includes cities: Milton Road, 40 Pa. 300.

*Charles P. Hewes,* for appellee.—It is clear that the property in suit was seated land: Kennedy v. Daily, 6 Watts 269; Lackawanna Iron Co. v. Fales, 55 Pa. 90; Early v. Euwer, 102 Pa. 338; Stoetzel v. Jackson, 105 Pa. 562; Bernhard v. Allen, 22 W. N. C. 67.

A sale of land for taxes is void where the owner of the land went to the county treasurer's office in good faith for the purpose of paying the taxes on the land, and used reasonable diligence to ascertain and pay them, and failed to do so by reason of the owner being actually misled by the assessment and the treasurer's advertised list of sales of unseated land: Freeman v. Cornwell, 2 Monaghan 500; Breisch v. Coxe, 81 Pa. 336;. Dietrick v. Mason, 57 Pa. 40.

The land being seated, demand must be made upon the owner for unpaid taxes before the treasurer has any jurisdiction to sell: Kean v. Kinnear, 171 Pa. 639; Norris v. R. R., 218 Pa. 88; Kramer v. Slattery, 73 Pa. Superior Ct. 361.

OPINION BY MR. JUSTICE SIMPSON, June 27, 1931:

In this action of ejectment, defendant appeals from the judgment entered on a directed verdict in favor of plaintiff. Admittedly the instruction was correct, unless defendant obtained a valid tax title under the facts hereinafter set forth. As we are satisfied she did not, the judgment must be affirmed.

While plaintiff was the owner of the land in dispute, which was located in the City of Erie, he went to the

office of the city treasurer to pay his taxes for the year 1921. The land was assessed at a valuation of $900, but was worth much more. Through some oversight he was not given a bill for or notified of the city tax of $10.17 for that year, but received bills for and paid all the other taxes, and, in later years, paid the city tax as well as the others. On February 1, 1922, the city treasurer made return to the county commissioners of the fact that the city tax for 1921 was unpaid, and they duly certified the fact to the county treasurer, who, on June 9, 1924, after advertisement and posting, sold the property to defendant's predecessor in title for $27.90, and, on June 15, 1926, executed and delivered a deed therefor to the purchaser. No notice was ever given to plaintiff of the fact of his delinquency, or of any of the later proceedings, and he did not know thereof until after the delivery of that deed, though he lived in the county, within twenty miles of the city, and his address seems to have been known to the officials in the city treasurer's office.

The main question to be decided is: Did the county treasurer have the right to sell appellee's property because of his failure to pay the city tax assessed against it? A brief résumé of the applicable statutes will answer this question; and, in considering them, we will start with the Act of June 4, 1901, P. L. 364, since it furnished a complete and exclusive system for the recovery of taxes from the seated lands upon which they were charged, and actually or impliedly repealed all earlier statutes bearing on the subject: Day v. Swanson, 236 Pa. 493; Long v. Phillips, 241 Pa. 246. Under it, the only remedy was by a lien filed, proceedings duly had thereon and a sale by the sheriff; the county treasurer was given no power or authority whatever. The next act is that of June 20, 1901, P. L. 578, which made the city treasurer the collector of such taxes, with power to sell the owner's personalty to recover the amount due, and as to the land itself directed him (section 12) "to make out schedules of said city......taxes uncollected upon his duplicates, with a brief description of the prop-

erties against which the same are assessed, for the purpose of having the same entered for lien or sold, in accordance with existing laws or laws which may be hereafter enacted. ...... The schedule of unpaid city taxes, hereinabove provided for, shall be certified by said treasurer, as collector, to the city solicitor of the respective city, for filing in court, with the like force and effect as if certified by the city treasurer under existing laws." The county treasurer is not mentioned in the statute.

Next in order is the important Act of March 30, 1903, P. L. 106, to which also the county treasurer is a stranger. Its first section specifies "That in addition to the remedies now provided by law for the collection of delinquent city taxes, the city treasurers of the several cities of the second and third class of this Commonwealth are hereby authorized and empowered to sell at public sale, in the manner hereinafter provided, all such property upon which the taxes, assessed and levied, have not been paid and have become delinquent." The later sections set forth the system leading up to the sale by the city treasurer and the effect thereof. At that time Erie was a city of the third class, incorporated as a city by the Act of April 14, 1851, P. L. 631, and classified as of the third class by the Act of May 23, 1874, P. L. 230. It will be noticed that by the Act of 1903 there is given to cities of the second and third classes the remedy of a sale by the city treasurer, in addition to that specified in the Act of June 20, 1901, supra.

The next statute is that of May 21, 1913, P. L. 285, which, as amended by that of June 1, 1915, P. L. 660, provides "That return of taxes assessed by the authorities of any county, school district, poor district, borough, incorporated town, or township, against seated lands, shall be made whenever personal property cannot be found thereon sufficient to pay such taxes, to the commissioners of the county, on or before the first day of February succeeding the date when the taxes were as-

sessed. Whenever any such taxes are not paid within two years after the date of the assessment, such seated lands shall be advertised and sold by the county treasurer, at the time and in the manner, and with the same conditions and effect, as unseated lands." Appellant's whole contention is based on the supposed applicability of these acts to sales for the recovery of delinquent city taxes.

It will be noticed, however, that these statutes do not refer to city taxes. To meet this difficulty, appellant asserts "that the words 'incorporated town' in connection with the context in the Act of 1915, are generic in meaning and construction, particularly in view of the fact that this act is a supplement to the Act of March 13, 1815, [P. L. 177; 6 Sm. L. 299], and must be construed in the light of the municipal subdivisions of the Commonwealth existing at the time the act became a law in 1815; no cities of the third class existed; outside of possibly two or three cities, all municipal subdivisions were counties, boroughs, incorporated towns, and townships, hence the words 'incorporated town' as used in the Act of 1915 refers to the meaning and construction applied as if incorporated in the Act of March 13, 1815, and must embrace all primary municipal corporations where a particular form of government sufficient for the requirements of the municipality is set up, which necessarily includes cities within the Commonwealth."

This is a remarkable contention. It says in effect that because in 1815 there were many incorporated towns and only a few cities, in future legislation "incorporated towns" must be held to include all cities. This is exactly the reverse of the true construction. Moreover, the Act of 1915 does not say that it is "a supplement to the Act of March 13, 1815" (which indeed had been repealed by implication: Brew v. Sharer, 42 Pa. Superior Ct. 89; allocatur refused, Ibid. xxxi), but that it is an amendment to the Act of May 21, 1913, and the latter statute does not refer to any previous enactment. Besides,

neither the Act of 1815 nor that of April 3, 1804, P. L. 517, 4 Sm. L. 201, of which the Act of 1815 is recited as an amendment, in any way refers to "incorporated towns," or to any other subdivision of the Commonwealth except counties, nor does either of them refer to any taxes except county and road taxes. In point of fact, the Acts of 1913 and 1915 were passed for the purpose of reinstating the practice authorized by section 41 of the Act of April 29, 1844, P. L. 486, 501, so far as concerns the public bodies referred to in the later acts: Bradford Co. v. Beardsley, 60 Pa. Superior Ct. 478, wherein we refused an allocatur, Ibid. xxxv; Finn v. Mellon, 71 Pa. Superior Ct. 7, affirmed in 265 Pa. 147.

During the early days of the Commonwealth there were a number of incorporated towns. Erie herself was created one by the Act of April 18, 1795, 3 Sm. L. 233, and so continued until the Act of 1851, supra. There were then also a number of cities. Under such circumstances, legislation specifically applicable to one only would not apply to the other. Subsequently the number of cities increased and incorporated towns became fewer. Whether any of the latter remain at the present time we do not know, nor is it important, since there is no statute or decision which places the two on the same plane. Hence appellant's contention on the point now under consideration must necessarily fail, especially since to assert it here would run counter to article III, section 3 of the Constitution, which requires a clear expression of the scope of the legislation in the title to an act. A title relating to incorporated towns cannot possibly be held to express clearly an intention that it shall apply to cities. This being so, it is unnecessary to refer to the authorities in other jurisdictions, where it has been held that the words "incorporated towns," in the particular statutes there being considered, were broad enough to include cities, for with us an express statutory or judicial declaration to that effect would have to appear, and there is none.

The final statute in the chain under consideration is that of May 29, 1917, P. L. 315. It amends the Act of June 20, 1901, P. L. 578, supra, and expressly authorizes (P. L. 318) a city treasurer, at the expiration of his term of service, to "turn over the unpaid or delinquent taxes on real estate to his successor in office, who shall have power to collect the same, either by having the same filed in court as a lien, or sell the same at public sale, as provided by law authorizing the sale of real estate for the payment of delinquent taxes." The county treasurer is not named in the act.

It thus appears that the county treasurer has nothing to do with the collection of city taxes, but that land which is liable for delinquent city taxes can be sold only by the sheriff or city treasurer, as specified in the Acts of 1901, 1903 and 1917, and this explains why Robey, in his work on "Real Estate and Conveyancing in Pennsylvania," page 203, says respecting the Act of 1913: "This act applied only to counties, poor districts, boroughs, incorporated towns, and townships, and did not apply to cities."

As regards cities of the second and third class, they were given by the Act of 1903 every privilege in relation to the recovery of delinquent taxes by sale of the land located therein by their own treasurer, as the Acts of 1913 and 1915 gave to other municipalities regarding land situated within them, the only essential difference being that, under the first cited act, the proceeding was simplified by having the tax sales made by the city treasurer instead of by the county treasurer, as provided in the other statutes. Cities of the first class have not had the system of collecting taxes by treasurers' sales for nearly a century, and to apply the Acts of 1913 and 1915 to them would render invalid, under the principle laid down in Finn v. Mellon, supra, every tax sale made since 1913, for in those cities such sales have not been made by the county treasurer. Perhaps these considerations explain why city taxes are not referred to in the Acts of

1913 and 1915; in any event, whatever the reason, it is clear that city taxes are not within the purview of those acts.

We have not referred herein to the Acts of May 14, 1925, P. L. 735; May 4, 1927, P. L. 716; April 25, 1929, P. L. 779, and May 9, 1929, P. L. 1684, because they were all passed after the county treasurer's sale which is under consideration in this case. It may not be amiss, however, to call attention to the fact that the last named statute expressly repeals all the others in this group, as it does also the Acts of 1913 and 1915, supra, relied on by appellant in this appeal.

The judgment of the court below is affirmed.