## Gordon, Secretary of Banking, *v.* Harrisburg et al., Appellants.

Argued November 27, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Paul G. Smith,* for appellants.

*Mark T. Milnor,* Special Counsel, with him *Shippen Lewis,* Special Deputy Attorney General, and *William A. Schnader,* Attorney General, for appellee.

OPINION BY MR. JUSTICE KEPHART, January 2, 1934:

Does a sale of property for delinquent taxes by the City of Harrisburg under sections 2575-86 of the Third-Class City Act of June 23, 1931, P. L. 932, divest the lien of a first mortgage recorded prior to the tax levy? The question was brought up in the court below by a petition for a declaratory judgment before the sale. It was held the lien of the mortgage would not be divested.

There are several ways by which property in cities of the third-class may be sold for taxes. The Municipal Lien Act of May 16, 1923, P. L. 207, permits filing a lien for taxes in the prothonotary's office of the county, to be followed by judgment, execution and sale by the sheriff. Section 31 of the act specifically provides that the lien of a mortgage recorded before any tax other than that of

the current year should not be disturbed by a sale for such tax. However, a second sale of the premises by the sheriff may be had with proper notice to interested parties, whereby "an absolute title to the property sold [may be acquired], free, and discharged of all tax and municipal claims, liens, mortgages, charges and estates of whatsoever kind, subject only to the right of redemption as provided by law." This act speaks for the security of property titles and preserves in official records the regularity of proceedings. Title searchers are not referred to records outside of those provided by law at the county-seat to ascertain the state of the title under investigation as it relates to a recorded mortgage.

Another method for the sale of land for taxes is by county treasurer's sale as authorized in the Act of May 29, 1931, P. L. 280. Delinquent taxes are returned to the county commissioners and certified to the county treasurer, after which a treasurer's sale follows. The lien of a mortgage recorded before the taxes became liens is not discharged by such a sale.

The last method for tax sale is that provided by sections 2575-86 of the Third-Class City Law of June 23, 1931, P. L. 932.* Here the city treasurer conducts the sale in the manner therein provided.

---

*Act of June 23, 1931, P. L. 932, 1024 et seq.:

Section 2575: "In addition to other remedies provided for the collection of delinquent city taxes, *the City Treasurer may sell at public sale, in the manner* hereinafter provided, any property upon which the taxes, assessed and levied, have not been paid and have become delinquent."

Section 2576: "Such sales shall be made on the first Monday in June, in the year succeeding the year in which the respective taxes are assessed and levied. . . . . ." Thereafter, the complete procedure, including the return and confirmation thereof, the filing of surplus bonds and the acknowledgment and delivery of deeds, is all regulated.

Section 2586: "The failure of the said collector to collect the said taxes from personal property, . . . . . .shall not impair the lien thereof or affect any sale made for the collection thereof." Further, section 2579 provides for redemption.

When a tax sale is commenced under a particular act of assembly, the procedure therein prescribed must be followed and under that act alone must the validity and effect of the sale be tested. Other legislation providing a different procedure or result cannot be used either to sustain such sale or secure additional rights or results. The act under which the proceeding is had must show the authority and the effect of such sale.

Sections 2575-86 of the Third-Class City Law, supra, do not state the legal effect of a sale by a city treasurer for delinquent taxes, on a mortgage recorded prior to the creation of the tax lien. The act is silent in this respect while the other acts do provide for this contingency.

Without statutory direction or authority the lien of a prior mortgage is not disturbed by a sale for taxes. The legislative intent, however, culminating in the Municipal Lien Act, supra, was to regard taxes as liens superior in point of *payment* to all other liens, but not to regard them as superior in point of *time*. See Northern Liberties v. Swain, 13 Pa. 113, 115. Courts have consistently interpreted the legislation of the past to the effect that a sale of seated lands for delinquent taxes did not discharge the lien of a mortgage recorded prior to the assessment of the tax: Perry v. Brinton, 13 Pa. 202; Cadmus v. Jackson, 52 Pa. 295; Fisher v. Connard, 100 Pa. 63; Rhein Bldg. Assn. v. Lea, 100 Pa. 210. When the Municipal Lien Act, supra, was enacted, it was necessary to provide for a second sale, the effect of which was to clear the title of all liens and encumbrances, including mortgages. When the Third-Class City Law, supra,

---

Section 2583: "......and such sale, after the period of redemption shall be terminated, shall be deemed to *pass a good and valid title to the purchaser* as against the person or persons in whose name such property was sold, provided the purchaser has filed the bond for surplus moneys as hereinafter provided."

*The privisions of section 2583, last quoted, are new and were not contained in the Act of March 30, 1903, P. L. 106 [53 P. S., section 10111], under which theretofore the city treasurer sold for delinquent city taxes.*

under which this sale was made, was adopted, the other acts herein referred to were all in effect, and the legislature knew of these provisions.

Appellant urges that the use of the words "good and valid title" in section 2583 mean that the purchaser acquires a title valid as against the holder of the first mortgage. However, to so construe these words would require us to leave without significance the words which immediately follow: "as against the person or persons in whose name such property was sold." Obviously these latter words confine the application of the words "good and valid title" to the owner and not to the lien holder. By no reasonable interpretation can this section be construed to mean that such a sale shall be deemed to pass a good and valid title "free and clear of all liens and encumbrances." It must be construed to mean what it says: "Such sales,......shall be deemed to pass a good and valid title to the purchaser *as against the person or persons in whose name such property was sold.*"

Appellant seeks to destroy a property right, appellee's mortgage, by attributing a meaning to the words, "good and valid title," broader than they can bear. When the legislature intends to accomplish the divestiture of the lien of a mortgage by tax sales, it must speak in clear, positive, and certain terms which require no strained, unusual or difficult construction. It would be insufferable to leave property-rights subject to inference, conjecture and debate. Furthermore, such sales should require personal notice to be given interested parties that they may protect themselves.

Appellant further contends that the language in the Act of April 3, 1804, P. L. 517, dealing with the sale of *unseated* lands for taxes, is similar to that in section 2583 of the Third-Class City Law, and that the interpretation of that statute is applicable to sales of seated lands under the Third-Class City Act. We cannot agree. The policy of the law in regard to the divestiture of liens by tax sales on both has been very different and for

sound reasons. The reason for the distinction is the lack of personal property, or other means, for liquidating the tax connected with unseated land and the presence of personal property, or other means, for enforcing the collection of the tax on seated lands; taxes on unseated land were liens against the land, those on seated land were not (Pottsville Lumber Co. v. Wells, 157 Pa. 5, 10) ; the proceeding in the one case was *in rem* and in the other *in personam,* a charge against the person. It is true there has been a certain breaking down of the policy of preserving the lien of mortgages, etc., on seated lands in tax sales [see Acts of May 21, 1913, P. L. 285, and June 1, 1915, P. L. 660, repealed by the Act of May 9, 1929, P. L. 1684], but these acts, however, merely applied to certain municipalities, *cities excepted.* These acts, including the repealing Act of May 9, 1929, supra, were superseded by the Act of May 29, 1931, P. L. 280, which specifically preserves the lien of the first mortgage. Hence, appellant's argument as to the change in policy is not sustained by the facts. Nothing is said in Sugden v. Rothschild, 304 Pa. 365, 371, which changes this thought. The question now before us was not under consideration in that case and the words there used were not intended to cover the question presently raised. We were discussing therein solely the effect of an improper procedure, that is, the validity of a sale by a county treasurer to collect delinquent city taxes; and not the effect of a sale, properly conducted in accordance with the statutes, on the liens and encumbrances on the land sold.

The legislature by the Act of April 30, 1929, P. L. 874, determined to insure the integrity of the mortgage lien by providing that the lien of a mortgage should not be disturbed by a tax sale, except as to unseated lands. This act, so far as the present controversy is concerned, virtually reënacts the Act of March 23, 1867, P. L. 43, which, it was held in Fisher v. Connard, supra, was intended to prevent the divestiture of the lien of a mort-

gage where taxes, charges or assessments have been filed which accrue subsequently to the mortgage, but have, by law, been given a priority. We have read with considerable care the case cited by appellant, Pottsville Lumber Co. v. Wells, supra; it merely holds that a sale in a mortgage foreclosure does not discharge taxes assessed during the year the land is sold, with the result that land purchased at a foreclosure sale can be sold for such unliened taxes even in the hands of the purchaser at such sale. The affirmation of this policy of the legislature to preserve the liens of mortgages, as indicated in this act, taken into consideration with the fact that the legislature when it desired to provide a method for destroying such liens, did so expressly and only in a cautious and deliberate manner, constrain us from giving so careless and easy an interpretation to the words of the Third-Class City Act. The mortgage lien would not be divested by a sale of property for taxes in a third-class city where the sale is made by the city treasurer.

The judgment of the court below is affirmed.