## Erie County's Appeal.

## Andrews Land Corporation's Appeal.

Argued April 15, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, HIRT and KENWORTHEY, JJ.

*W. B. Washabaugh, Jr.,* with him *J. B. Held,* County Solicitor, and *P. V. Gifford,* for appellants.

*Henry R. Jeffs,* Assistant City Solicitor, with him *Edward M. Murphy,* City Solicitor, for appellee.

OPINION BY KELLER, P. J., July 23, 1942:

On December 20, 1937, the county treasurer of Erie County sold to the county commissioners of said county, at a public county treasurer's tax sale, a lot of seated land in the City of Erie, owned by Andrews Land Corporation, for taxes duly returned as unpaid. This sale was made pursuant to the Act of May 29, 1931, P. L. 280, as amended, particularly by the Act of July 19, 1935, P. L. 1321, which enlarged the period within which the owner of the land might redeem it, if the land was purchased at said sale by the county commissioners, from two years to five years [1] (sections 15 and 16). The pur-

---

[1] By the Act of June 20, 1939, P. L. 498, section 16 was again amended so as to provide that the redemption period as to lands *thereafter* purchased by the county commissioners should be two years. It does not affect this sale.

chase was made pursuant to the directions of section 10 of the statute, which provides that where "an amount sufficient to pay taxes, interest, and the costs is not bid, [the property] shall be purchased by the county commissioners". The county took title to it, however, as trustee for the benefit of all the taxing authorities, county, city, borough, town, township, school district or poor district, which had valid, enforceable claims for unpaid taxes against said land, in proportion to their respective interests. A deed for the said lot of land was duly executed, acknowledged, etc., pursuant to the directions of the act.

On June 7, 1938, the city treasurer of the City of Erie, exposed the same lot of land to public sale for city taxes, assessed and levied, which had not been paid and had become delinquent, and sold the same to the City of Erie. This was done pursuant to the provisions of the Third Class City Law of June 23, 1931, P. L. 932, sections 2575 to 2586. The period for redemption by the owner fixed in said act (sec. 2579) is "at any time within two years after such sale". A deed was acknowledged and delivered to the city pursuant to said act.

On October 14, 1940, a petition was presented to the court of common pleas, on behalf of the City of Erie, (under the Act of May 21, 1937, P. L. 787, since amended by Act of July 29, 1941, P. L. 600), praying for the approval of an agreement of private sale of said lot, inter alia, to Edwin G. Mazzie and John P. Mazzie for an amount insufficient to pay all the unpaid taxes on said lot due the City of Erie, the County of Erie and the School District of the City of Erie, payable in five equal annual installments, but to be accepted in full compromise, settlement and satisfaction of all taxes, penalties, interest and costs due from said land to all of said tax-levying authorities, up to, but not including, July 1, 1940, with certain other provisions not here specially material.

Objections to the proposed sale were filed on behalf of Andrews Land Corporation and the County of Erie, which after hearing, were dismissed, and a decree was entered approving said sale, and subsequent petitions for rehearing were refused.

Separate appeals were taken by the County of Erie and Andrews Land Corporation.

In view of the disposition we shall make of these cases it is not necessary for us to consider the propriety of the proposed private sale to the Mazzies or to discuss at length the several acts of assembly, and their numerous amendments, pursuant to which the sales above mentioned were held. They represent re-enactments, in principle, of statutes which from time to time have been passed, (and some, likewise, repealed), with the intent of applying to *seated* lands the general procedure prescribed for tax sales of *unseated* lands by the Acts of April 3, 1804, 4 Sm. L. 201; March 13, 1815, 6 Sm. L. 299; March 13, 1817, 6 Sm. L. 426. See, inter alia, Section 41 of the Act of April 29, 1844, P. L. 486, 501, (repealed as to seated lands, Act of June 4, 1901, P. L. 364; Act of March 26, 1903, P. L. 63; *Day v. Swanson,* 236 Pa. 493, 84 A. 958) ; Act of May 21, 1913, P. L. 285, enlarged by Act of June 1, 1915, P. L. 660; held not to apply to cities, *Sugden v. Rothschild,* 304 Pa. 365, 155 A. 864; amended May 14, 1925, P. L. 735; April 25, 1929, P. L. 779; repealed May 9, 1929, P. L. 1684). It is to be noted that following the taking of the appeal in *Sugden v. Rothschild,* supra, which affirmed the judgment of the lower court, delivered by Judge Hirt, now a member of this court, holding that the Acts of May 21, 1913, P. L. 285, and June 1, 1915, P. L. 660, did not cover taxes levied by cities—[Act of May 9, 1929, P. L. 1684, did not include cities either]—the Act of May 29, 1931, P. L. 280, was passed which specifically included city taxes within its provisions; and the Third Class City Law of 1931, P. L. 932, also granted

city treasurers the right to sell city lands for unpaid city taxes. Two methods were thus furnished by the same General Assembly to supply the lack of legislation pointed out by that decision: (1) City taxes could be returned to the county commissioners and thus be included in the protection afforded by that Act (1931, P. L. 280); or (2) the city treasurer could himself sell the land for the payment of delinquent city taxes. In either event the county or city purchasing the real estate at the respective sale, for less than the full amount of such taxes and costs, became a trustee for all the tax-levying authorities to whom unpaid taxes were due, and all the taxes due such authorities were to be included in the money paid by the owner if he redeemed his property.

We find nothing in any of the acts that supports any idea of *competition* between city and county, or that authorizes the city, after the county has acted and become the purchaser of land for the benefit of all the tax-levying authorities having claims for delinquent taxes,—including the city—to sell the land over again and thus destroy the county's title, in order that it might itself buy in the property as trustee for the tax-levying authorities aforesaid. If the county has acted and the county treasurer has sold the land and the county commissioners have purchased it, the law contemplates no later action along the same line by the city, and no sale in such circumstances by the city treasurer. The Act of 1931, P. L. 280, clearly provides (sec. 16) that when the county commissioners shall purchase any real property at a county treasurer's sale, "such property shall not, so long as it remains the property of the county, be charged in the duplicate"; but that thereafter, until the period for redemption has elapsed, the commissioners shall, in separate columns, in the book provided for a record of such purchases, "charge every such tract of land with like

county, city, borough, town, township, school and poor taxes, as would have been chargeable against the land had the same not been purchased by the County Com-missioners". These provisions, and others in the act not necessary to be recited here, to our mind, deprive the city authorities of the right to proceed under section 2575 of the Third Class City Law of 1931, P. L. 932, and sell to the city, or any one else, the land already sold by the county treasurer and purchased by the county commissioners for the benefit of all the tax-levying authorities concerned. And this conclusion is not affected by the fact that at the time of the sale by the county treasurer in 1937 the owner of the land had five years within which to redeem, while if the city treasurer had sold the land first, the owner would have had to redeem within two years after the sale.

In our opinion, all of the proceedings in connection with the sale by the city treasurer of the lot on June 7, 1938 were wholly irregular and invalid by reason of the fact that title to the same had already passed to the county commissioners under the sale of the county treasurer held December 20, 1937, and that thereafter the county commissioners held the property as trustee for the benefit of all the tax-levying authorities concerned, including the City of Erie, and the latter had no authority to sell the land which had been purchased for its benefit, inter alia, by the county commissioners.

We are confirmed in our view by the language of Chief Justice KEPHART in *Gordon v. Harrisburg et al.,* 314 Pa. 70, 72, 73, 171 A. 277, where, after reciting the three methods by which property in cities of the third class might be sold for taxes, viz., (1) by sheriff's sale on judgment obtained on the lien in the prothonotary's office—Act of May 16, 1923, P. L. 207; (2) by county treasurer's sale—Act of May 29, 1931, P. L. 280; and (3) by city treasurer's sale—Sections 2575-86 of the Third Class City Law of June 23, 1931, P. L. 932, he

continued: "When a tax sale is commenced under a particular act of assembly, *the procedure therein prescribed must be followed* and *under that act alone* must the validity and effect of the sale be tested. Other legislation providing a different procedure or result cannot be used either to sustain such sale or *secure additional rights or results*". (Italics supplied).

Any proceedings for the redemption of this land by way of compromise for less than the total taxes, penalties, interest and costs, and any proceedings for its private sale, after the period for redemption has passed, will have to be taken by the *county* under the Act of 1937, P. L. 787 as amended by the Act of 1941, P. L. 600, subject to the approval of the court of common pleas.

The first, second and fifth assignments of error are sustained. The decree of the court below is reversed at the costs of the City of Erie, and the city treasurer's sale of the land in question and all proceedings thereunder are set aside as irregular and invalid.