## Scanlon's Petition

*William McElwee, Jr.*, for county commissioners.

BRAHAM, P. J., August 20, 1943. — The question presented in this case is whether the court should approve an agreement for compromise of taxes upon real estate entered into by the county commissioners and the former owners of the lands, although there is also pending a petition of the commissioners for approval of an agreement of private sale of the same lands to a stranger at a substantially larger price. This question was recently the subject of examination and decision by this court in the case of Weible's Tax Compromise, 48 D. & C. 213, and in consequence it is not necessary to repeat here everything said in that opinion. It is necessary, however, to understand the facts in the present case.

The real estate in question was bought by the county at treasurer's sale on May 1, 1940, as the property of Honora Scanlon's heirs. It consists of a lot and house, a second lot and two houses, and an acre tract and two houses, all situated in the seventh ward of the City of New Castle. There was no redemption of the lands. On January 11, 1943, at no. 37, March term, 1943, M. D., the county commissioners petitioned the court for ap-

proval of a private sale of the lands to James A. Fletcher for $2,700. At that time the total taxes, including penalties, interest, and costs amounted to $6,015.60. At the hearing on this petition C. A. Stewart appeared and offered a larger sum. The matter was referred back to the commissioners and sealed proposals from bidders were entertained. As a final result of this procedure C. A. Stewart was the highest bidder at the sum of $3,505. It was announced at a continued hearing on February 17, 1943, that the petition on behalf of James A. Fletcher would have to be dismissed and a new petition on behalf of Stewart presented.

Mr. Stewart never presented himself to make a new agreement and nothing further was done until May 17, 1943, when the commissioners presented for approval at no. 112, June term, 1943, M. D., a second agreement with James A. Fletcher, providing for a sale of the same lands to him for $3,555. At the hearing on May 26, 1943, C. A. Stewart again appeared and offered to bid more. This time the court directed the commissioners to entertain oral and competitive bidding at a time and place fixed. On June 2, 1943, the commissioners filed a report setting out the taking of competitive bids from Mr. Fletcher and Mr. Stewart and Stewart's bid of $3,810 as the highest bid. At the continued hearing on May 2, 1943, Eugene Scanlon, one of the heirs for whom Mr. Fletcher had been acting, appeared and stated that he wished to raise his bid. The matter was again referred back for further competitive bidding as a result of which Mr. Stewart was again the high bidder at a figure of $3,825.

Because it was impossible under the law to award the property to Stewart on a petition for approval of an agreement of sale to Fletcher, a petition for approval of an agreement of sale to Stewart was also presented and June 21, 1943, fixed as the time when the two would come up for hearing simultaneously.

At the time appointed a petition was presented by the commissioners asking approval of an agreement between themselves and all the heirs of Honora Scanlon, including Eugene Scanlon, providing for a compromise of the taxes for the sum of $4,000, the face thereof plus costs amounting to $3,961.32. Due notice was given and on June 28, 1943, all three petitions came before the court. At this hearing C. A. Stewart by his attorney orally announced that he would pay $4,500 for the property.

Should the court approve a private sale to James A. Fletcher for $3,555, a private sale to C. A. Stewart for $4,500 (an order approving a private sale to him for an amount larger than that stated in his agreement might be made under existing legislation), or the proposed compromise with all the former owners for $4,000?

The petition for compromise is filed under section 1 of the Act of May 21, 1937, P. L. 787, as amended by the Act of July 29, 1941, P. L. 600, sec. 1, 72 PS §5878a; the petition for private sale under section 2 of the same act, 72 PS §5878b. After the purchase of the lands by the commissioners they were trustees for the municipalities having tax claims: Andrews Land Corporation's Appeal, 149 Pa. Superior Ct. 212.

The statute authorizing the court to approve an agreement to compromise taxes or a private sale provides that the court shall do so if, after hearing, "the court is satisfied that the proposed compromise or private sale is proper and to the advantage of all the taxing authorities interested". In the Weible case the municipal authorities interested were before us protesting the compromise and advocating the private sale. In the present case the county commissioners have asked us to approve the compromise and the two private sales. In any case the guiding principle is the same—the disposition authorized must be "to the advantage of all the taxing authorities interested." How can we

say that a tax compromise for $4,000 is more to the advantage of the municipalities than a private sale for $4,500?

The argument has been advanced that C. A. Stewart, who is the person named in the petition for private sale, has been bidding only to embarass Eugene Scanlon, one of the former owners, in his attempt to recover the lands. Evidence was offered that Stewart had demanded to be bought off. Certainly Stewart has acted in a rather peculiar fashion. At one point in the proceedings he had the property for $3,505 but would not enter into an agreement to pay for it.

But all this is beside the point. What is "to the advantage of the taxing authorities interested?" This is the question. At the end of this tortuous course the taxing authorities are now offered $4,000 or $4,500 instead of $2,700.

The law has always favored allowing the former owner to pay the back taxes and recover the property. See the authorities cited in Weible's Tax Compromise, supra. Furthermore, there is a point at which the commissioners may compromise back taxes on lands bought by a county at tax sale without approval of court. This is by payment of taxes with interest and costs but less penalties, under the Act of July 17, 1935, P. L. 1091, sec. 1, 72 PS §5879, which reads as follows:

"That, in all cases where, heretofore or hereafter, real estate shall have been or shall be purchased at tax sale by a county, it shall be lawful for the county commissioners in their discretion, to permit a redemption of said real estate, or part thereof, so long as the title thereto remains in the county, notwithstanding the period during which the right of redemption existed shall have expired; provided all taxes with interest and costs due thereon, but less any penalties, shall be paid."

The commissioners, by filing a petition asking approval of an agreement to compromise the taxes at an

amount slightly in excess of face and costs, have indicated their willingness to accept a larger amount. By section 4 of the Act of 1937, as amended in 1941, 72 PS §5878d, the court is given authority to approve a compromise of taxes "upon the payment of the agreed amount or such amount as the court may approve". Under all the circumstances in this case it is just to allow the former owners to redeem the property under the terms permitted by the statute, namely, by paying face, interest, and costs, although a larger offer from an outsider must be rejected. Entertaining these views we make the following

<em>Order</em>

Now, August 20, 1943, after full consideration of this case, the proposed compromise of taxes for the sum of $4,000 is disapproved, but in lieu thereof the court approves another compromise, whereby the former owners shall pay all taxes with interest and costs but less any penalties.