## Benzinger Township School District v. Elk County

*A. J. Straub*, for plaintiff.

*John H. Cartwright*, for defendant.

HIPPLE, P. J., June 27, 1944. — The parties have agreed upon a case stated which presents for consideration two questions: (1) Where a county purchases seated land at a tax sale held by the county treasurer, and after the purchase of the land charges it, as required by law, with county, county institution district,

township, road, and school taxes and, after the period for redemption has passed, the land is sold at public sale by the county commissioners for a sum which is in excess of the taxes, interest, and penalties due at the date of the treasurer's sale and the amounts charged against the real estate during the period it was held by the county commissioners, is the plaintiff school district entitled to the taxes returned and charged against the real estate at the time the county received the purchase price therefor; and (2) is the school district entitled to its proportionate share of the surplus or excess realized from such sale?

The procedure relating to the sale of seated lands by the county treasurer and the county commissioners is set forth in the Act of May 29, 1931, P. L. 280, as amended by the Act of June 20, 1939, P. L. 498, 72 PS §5971a to §5971q, inclusive.

Plaintiff is a school district of the fourth class in Elk County, and defendant is a political subdivision of the Commonwealth acting through its commissioners.

For the years 1934 to 1939, inclusive, plaintiff levied and assessed taxes against the Pennsylvania Fire Proofing Company, a corporation, owning seated real estate within the limits of plaintiff district. These taxes were not paid, and were duly returned according to law as unpaid to the proper authorities of Elk County. On October 2, 1939, there had been returned, as delinquent and unpaid, taxes assessed by the different taxing authorities against the real estate in question for the years 1934 to 1939, inclusive, amounting, with interest and penalties, to $11,612.29, of which amount $5,745.38 represented taxes assessed and levied by plaintiff against the land, with interest and penalties. On October 2, 1939, the Treasurer of Elk County offered the real estate for sale at public sale for the delinquent taxes returned for the year 1934, amounting with interest and penalties to $3,658.91, and there

being no bid for said real estate in an amount sufficient to pay such delinquent taxes, interest, and penalties the land was purchased by the Commissioners of Elk County as required by section 6 of the Act of June 20, 1939, P. L. 498. This real estate having been purchased by the county commissioners subsequent to the Act of June 20, 1939, the right of redemption by the owner under section 8 (72 PS §5971p) remained for a period of two years after the sale by the county treasurer. There being no redemption, the real estate was sold by the county commissioners at public sale, under section 9 of the act (72 PS §5971q) on February 26, 1942, for the sum of $15,500. During the period of redemption, viz, two years from the date of the sale by the county treasurer as provided in section 8 of the act (72 PS §5971p), the Commissioners of Elk County, in a book provided for that purpose, entered the name of Pennsylvania Fire Proofing Company as whose land the real estate was sold, a brief description of the property, the amount of taxes, interest, and costs for which it was sold, and charged the real estate for the years 1940 and 1941 with such county, road bond, county institution district, township, road, and school taxes as would have been charged against the land had the same not been purchased by the county commissioners, the amount thereof totaling $2,160.70.

The excess or surplus of the purchase price of the land at the sale held by the county commissioners, above the taxes, interest, and penalties due and owing on October 2, 1939, and the amounts charged against the real estate by the county commissioners for the years 1940 and 1941, amounted to $1,727.01. The county commissioners paid to plaintiff the taxes, interest, and penalties due to it from 1934 to 1939, amounting to $5,745.38, but have not paid the amount of the taxes charged by the county commissioners for the years 1940 and 1941, during the period the land was held by

the commissioners for redemption, amounting to $1,-274, nor have they paid any proportionate share of the surplus realized from the sale of the real estate by defendant. This proportionate share of the surplus is stated to be $880.

It seems beyond question that plaintiff is entitled to be paid by defendant the taxes charged against the land in question by the county commissioners for the years 1940 and 1941, amounting to $1,274. This was the period during which the land could have been redeemed by the owner and the taxes for that period were charged by the county commissioners in the book kept for that purpose as required by section 8 of the Act of June 20, 1939. When the county took title to the land it did so, not for its own benefit alone, but as trustee for the benefit of all the taxing authorities, county, township, school district, or county institution district "which had valid, enforceable claims for unpaid taxes against said land in proportion to their respective interests": Andrews Land Corporation's Appeal, 149 Pa. Superior Ct. 212, 214.

In the case of Falls Creek Borough v. Jefferson County et al., 45 D. & C. 367, 382, Long, P. J., in a well-considered opinion, which we adopt as our own, held that "the county commissioners were agents and trustees for and in behalf of the county and its taxing municipal subdivisions in the purchase of land from the county treasurer at tax sale and continued in that capacity during the time that they held, sold, and collected the purchase price for the lands conveyed by them at private sale. Such trusteeship exists until distribution of the funds received has been made. They [county commissioners] will have no desire to enrich the county with funds that rightfully belong to the plaintiff borough."

Judge Long made an exhaustive study of the various acts relating to the sale of lands for taxes, and cited

the case of Township of Rush v. Schuylkill County, 100 Pa. 356, in which the Supreme Court held that if the proceeds of the sale of land by the county are sufficient the county should pay not only the taxes due to the supervisors of the township at the time of the treasurer's sale, but also the taxes charged on the land for each year during the period allowed for redemption.

The first question must therefore be answered in the affirmative, and the county should be required to pay to plaintiff the taxes for 1940 and 1941 charged against the land in question amounting to $1,274, this being the period during which the land might have been redeemed by the owner.

As to the second question, there would seem to be no good reason why the county alone should profit from the sale. The county was not acting in its individual capacity and for its sole benefit when it purchased the lands at the treasurer's sale on October 2, 1939. Inasmuch as the bid was not sufficient to pay the taxes, interest, and costs, the county followed the mandatory provisions of section 6 of the Act of June 20, 1939, and purchased the land. In doing so, it was acting not only for itself, but for all the taxing municipal subdivisions, and as a trustee and agent for the same. The provision of the act requiring the county commissioners to purchase the land under such circumstances is for the purpose of simplification and to avoid the complications and difficulties which would naturally arise if each of the taxing authorities were obliged to attempt to protect its own interest by bidding at a treasurer's sale. It was never intended that any one of the taxing districts should gain any advantage or be preferred over the other in the procedure set up for the sale of land and the collection by such means of the taxes due and owing thereon.

If the amount received by the county commissioners at its sale had been insufficient to pay all the taxes due

and owing, no preference would be given to the county, or to any other taxing district, but the county would be entitled to receive its proportion and would be liable to pay to the other districts each their proportion. All the taxing authorities are placed upon the same basis and are dealt with in the same manner. All the taxes, by whatever municipal subdivision levied and assessed, are treated alike throughout the statute.

It follows that each of the taxing districts should receive its proportionate share of any profit or surplus above the amount necessary to pay all unpaid taxes and the taxes charged against the land during the time the land was held by the county commissioners, together with interest, penalties, and costs. It would be decidedly inequitable for the county alone to receive such benefit.

Therefore, we conclude that plaintiff is entitled to be paid by defendant the sum of $880, its proportionate share of the profit or surplus received by defendant.

### Order

And now, June 27, 1944, the Prothonotary of Elk County is hereby directed to enter judgment for plaintiff and against defendant in the sum of $2,154.