**Household Consumer Discount Co. v.
Extended Care Centers, Inc.**

*Stephen H. Hutzelman*, for plaintiff.
*J. Gregory Moore*, for defendant.

ANTHONY, *J.*, October 15, 1980—This is an action for declaratory judgment, the parties seeking a determination as to the status of a mortgage. The mortgaged property was acquired by defendant, Extended Care Centers, Inc., at a tax sale.

The issue at this point is plaintiff's demurrer to defendant's new matter.

The property at issue was once owned by a Margaret Graham. In 1972 Graham executed a mortgage in favor of plaintiff, Household Consumer Discount Company (Household), said mortgage being recorded on May 4, 1972. At the time that the mortgage was recorded, the 1972 city and school taxes had not been paid. Defendant purchased the property at a tax sale conducted by the city treasurer as a result of non-payment of city and school taxes for the years 1972 and 1973. The city treasurer's deed to defendant was dated June 7, 1976. Defendant brought an action against the prior owner to quiet title at No. 650-A-1979. No answer was filed, and judgment was entered in that action on May 9, 1979.

The issue raised by the new matter and plaintiff's demurrer thereto is, whether plaintiff's mortgage was divested by virtue of the city treasurer's tax sale. Before reaching the merits of the parties'

claims, we must note that the 1979 action to quiet title has no collateral estoppel effect with regard to plaintiff's mortgage and is thus irrelevant to this case. See G.A.G. Corp. v. Auritt, 226 Pa. Superior Ct. 118, 312 A. 2d 441, 449 (1973).

The sale in question was conducted pursuant to certain provisions of The Third Class City Code of June 23, 1931, P.L. 932, 53 P.S. §§37541-37552. The legislature has provided these sections as an additional method of recovery of delinquent city and school taxes on property which has not been sold pursuant to any of the other statutory tax sale schemes: §37541. Once the city treasurer has obtained the schedules of unpaid taxes, he may advertise that the property will be sold: §§37543 and 37544. As in similar statutes, the owner has the right to redeem the property within two years: §37545.

Of relevance to this action is the quality of title which passes in such a tax sale. Unfortunately, the statute itself offers no guidance. All that is provided is that, as against the prior owner, the purchaser obtains "good and valid title." §37549.

Plaintiff cites two cases in support of its assertion that the instant tax sale did not divest the 1972 mortgage. In Gordon v. Harrisburg, 314 Pa. 70, 171 Atl. 277 (1934), the court was faced with the question of whether a tax sale conducted pursuant to The Third Class City Code would divest a mortgage recorded prior to the tax levy. The Gordon court rejected appellant's argument that the prior mortgage was divested by virtue of the "good and valid title" language now found in section 37549, holding that such an interpretation would strain the language beyond its clear intent. Thus, finding that The Third Class City Code was silent as to mortgage

divestiture, the court looked to similar statutes for guidance. In particular, the court cited the divestiture provisions of the Municipal Lien Act of May 16, 1923, P.L. 207, as amended, 53 P.S. §7101 et seq., and of the Act of 1931, governing county treasurer's sales of seated lands (now The Act of May 22, 1933, P.L. 924, 72 P.S. §5971 et seq.). Both of these acts provide that a mortgage recorded prior to the tax lien will not be divested. The Gordon court therefore concluded that the mortgage, which was recorded three years prior to the assessment of the tax for which the sale was made, was not divested.

Plaintiff also cites Appeal of Andrews Land Corporation, 149 Pa. Superior Ct. 212, 27 A. 2d 700 (1942). In that decision, the court merely recited language from Gordon to the effect that the regularity of a tax sale must be determined *only* in light of the specific statute which authorized the sale. Plaintiff argues that the language from Gordon, as repeated in Andrews, precludes this court from treating the instant sale as having been conducted under any other tax sale statute.

We agree with plaintiff that the various tax sale schemes are discrete procedures which must be followed precisely. We do not agree, however, that the divestiture provisions of other acts are irrelevant to the determination of this action. Although the Gordon court emphasized that one may not use the provisions of a different statute to secure additional rights, that court also found that a review of similar statutes was a proper method of determining legislature intent. The court found such a review to be necessary since, as to the issue of divestiture, The Third Class City Code was silent.

Therefore, this court will look to similar tax sale schemes in order to determine the validity of plaintiff's mortgage. We first look to the Municipal Lien

Act, 53 P.S. §7101 et seq. Section 31 of that act provides that "Mortgages . . . which were recorded . . . before any tax other than for the current year. accrue . . . shall not be disturbed by such sale unless a prior lien is also discharged thereby." In the Act of 1931 for the sale of seated lands (72 P.S. §5971 et seq.) the effect of a sale on a mortgage is governed by section 5971(i). That section provides that a sale divests all liens except a ". . . mortgage which shall have been recorded before such taxes became liens, by return and docketing, as herein provided. . . ."

The most recent, and most comprehensive tax sale procedure is the Real Estate Tax Sale Law of July 7, 1947, P.L. 1368, 72 P.S. §5860.101 et seq.[1] Section 5860.609 provides that a sale will discharge all liens except for the lien of a ". . . mortgage which shall have been recorded before such taxes became liens. . . ."

In the instant case, the mortgage was recorded on May 4, 1972. The 1972 city and school taxes became a lien on the property on January 1, 1972 by virtue of 53 P.S. §7102:

"All taxes which may hereafter be lawfully imposed and assessed by counties, institution districts, cities, boroughs, towns, townships, and school districts on real property, are hereby declared to be a first lien on such real property (but subordinate to the lien of taxes imposed by the Commonwealth), and every such lien shall date from the day on which the millage or tax rate is fixed by the proper authority of any such political subdivision, except where such taxes are imposed and assessed prior to the commencement of the

---

1. See The Old and the New Pennsylvania Tax Sale Procedure, by Leo McKay, 53 Dick.L.Rev. 177 (1948-49).

fiscal year for which the same are imposed or assessed, in which case the lien of such taxes shall date from the first day of the fiscal year for which such taxes are imposed or assessed."

Thus, it is clear that plaintiff's mortgage was recorded after the 1972 taxes became a lien on the property. Under the various tax sale procedures discussed above, such a mortgage would be divested. We feel that the result must be the same for a sale conducted pursuant to The Third Class City Code.

As stated in lower court opinion in Gordon, which was affirmed, "How can it be said that the Legislature in enacting the Third Class City Law intended to give a wholly different effect to a tax sale [made] by a city treasurer?" 19 D. & C. 47, 51 (1933). We agree that the legislature must have intended that quality of title be consistent with regard to the various tax sale procedures. As noted earlier, the City Treasurer's sale was provided as an *additional* method through which a city may collect delinquent taxes. Plaintiff's assertion, if accurate, would provide the city with a fairly unattractive method of collecting such taxes, since sale would be much more difficult if the property were still encumbered. Indeed, if a sale under The Third Class City Code did not divest a subsequent mortgage, the city would be in a better position by waiting until the county sold the property, free of the mortgage, and then obtaining the delinquent amount from the proceeds of the county sale.[2] We refuse to find that the Legislature intended to provide third class cities with such an inferior tax collection procedure.

---

2. The county would hold the property as trustee for the city. See Andrews, supra, at 27 A. 2d at 702.

## ORDER

And now, October 15, 1980, it is ordered and decreed that plaintiff's demurrer to defendant's new matter is overruled.