# Woodland Oil Company *versus* Shoup.

1. Where land is purchased at a Treasurer's sale of unseated lands for the non-payment of taxes, the title of the former owner is not fully divested until the expiration of two years after the sale. Before giving the surplus bond (where the bid is more than accrued interest and costs), the purchaser has no title whatever; after giving said bond he has an inceptive title which becomes absolute in two years, but is not retroactive so as to date back to the Treasurer's sale.

2. A. purchased unseated timber lands at a Treasurer's tax sale, and a deed was duly made to him by the Treasurer. He did not execute the surplus bond, however, until nearly two years after the sale. Meantime B., under a contract with the former owners of the land made between the date of the sale and the execution of the surplus bond, cut and manufactured timber from the land. The former owners failed to redeem within the two years, and collected the amount of the surplus bond from A. In an action of replevin by A. against B. for the timber:

*Held,* that a compulsory non-suit was properly entered by the court below.

October 9th, 1884.  Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Error to the Court of Common Pleas of *Forest county :*  Of October Term, 1883, No. 128.

Replevin, by the Woodland Oil Company against John Shoup, for about 1,000,000 feet of pine lumber, valued at $10,000.

At the trial, before Taylor, P. J., the following facts appeared : On June 10th, 1878, the plaintiffs purchased at a Treasurer's sale of unseated lands in Forest county for arrearages of taxes, a certain tract of unseated timber land in Kingsley township. The taxes and costs of sale were $169.50, and the bid for the land was $1,484.50. A deed from the Treasurer to the plaintiffs was duly executed, dated June 10th, 1878, and acknowledged in open court September 23d, 1878.

A bond for the surplus bid, to wit, for $1,315, was executed by the plaintiffs, bearing date March 26th, 1880. This was delivered to the Treasurer and by him filed in the prothonotary's office May 29th, 1880.

On October 25th, 1879, the defendant, Shoup, contracted with John and Thomas Wilkinson, the former owners of the land, for the timber thereon ; and under this contract he cut and carried away the lumber in controversy. This was after the acknowledgment of the sheriff's deed, and, as alleged by the plaintiffs, after the payment of the $169.50 taxes and costs of sale, but before the execution of the surplus bond.

After the time for redemption had expired, to wit, on June 28th, 1880, John and Thomas Wilkinson caused judgment to

be entered on the surplus bond for the said $1,315, and in due course collected the same by execution from the plaintiffs.

The latter having introduced evidence to the above effect rested, and the defendant's counsel moved for a compulsory non-suit, assigning the following reason therefor : "The surplus bond in evidence shows on its face that it was not executed or delivered until the 16th of March, 1880, which was after the timber in controversy was all cut and manufactured into lumber." 。

BY THE COURT : "There being no controversy that the execution of the bond was of the same date as purports to be upon its face, the motion is granted." Exception.

A motion to take off this non-suit was overruled by the court, to which the plaintiffs also excepted and afterwards took this writ, assigning for error the rulings of the court in granting the compulsory non-suit, and in refusing to take off the same.

*D. I. Ball* (with whom were *W. M. Lindsey* and *C. C. Thompson*), for plaintiffs in error.—Under the Act of April 3d, 1804, and its supplement of March 13th, 1815, the purchaser of land at a Treasurer's sale for non-payment of taxes takes by his purchase an inchoate title, which, on failure of the former owner to redeem from the sale within two years, becomes absolute, and the title of the purchaser relates back to the day of the sale and date of the deed.

A surplus bond given within two years from the date of sale is in time : Burd's Executors *v.* Patterson, 10 Harris 225 ; Sutton *v.* Nelson, 10 S. & R. 238 ; McDonald *v.* Maus, 8 Watts 364 ; Bayard *v.* Inglis, 5 W. & S. 468. A delay in giving the bond does not prejudice the security of the former owner for the surplus of the bid, and he has no right to complain if the bond is not given until toward the close of the two years. The plaintiffs' rights under their deed are just the same as though their bond had been given to the Treasurer on the day of the sale, and the former owners, by accepting the bond, prosecuting it to judgment and execution, and collecting the amount thereof, are estopped from alleging any irregularity in the process under which the plaintiffs derived their tax title, and from asserting any different effects or consequences than ordinarily attach to a perfect tax title. A Treasurer's deed is closely analogous to a sheriff's deed. The duty to make the sale was first enjoined by the law upon the sheriff. It has been frequently decided that a sheriff's sale, at the time of the sale, conveys an inceptive interest in the soil, an inchoate, inceptive, incomplete title to the land, which, upon execution and acknowledgment of the deed, relates back

to the day of sale : Stover *v.* Rice, 3 Wharton 21 ; Hoyt *v.*
Koons, 7 Harris 277 ; Morrison *v.* Wurtz, 7 Watts 438 ; Sla-
ter's Appeal, 4 Casey 170 ; Stephen's Appeal, 8 W. & S.
186; Robb *v.* Mann, 1 Jones 300 ; Hardenburg *v.* Beecher,
8 Out. 20.   The Treasurer in making the sale has the same
powers as were formerly exercised by the sheriff.   According
to the plain language of the Acts of Assembly we have
quoted, we may follow this analogy still further, and urge
that a Treasurer's deed, upon failure to redeem, becomes ab-
solute, and relates back to the day of sale as well as the
sheriff's deed.   It follows, then, that a purchaser at a Treas-
urer's sale has a right to all the estate and interest in the land
which existed at the day of the sale, less any diminution from
ordinary and reasonable use.

*B. J.* and *A. B. Reid*, for defendant in error.—The case of
Woodland Oil Company's Appeal, 1 Pennypacker 480, was a
case involving the precise question raised here, and arising on
the same controlling facts.   In that case the cutting of the
timber complained of by the purchaser at tax sale was done
by the owners (Wilkinsons), after the Treasurer's sale, and
before the giving of the surplus bond.   In this case the cut-
ting was done between the same points of time by the defen-
dant, Shoup, under a contract with the owners for the purchase
of the pine timber.   The per curiam opinion of this court in
that case is as follows :   " The timber upon the land was cut
by the owners before the purchaser at the tax sale had exe-
cuted the surplus bond.   Until that had been done he had no
title whatever.   They had the ownership and the right to the
full enjoyment of the land and timber."   It is well settled
that the purchaser of unseated lands at a Treasurer's sale,
when he receives his deed, takes but an inchoate title, which
it requires the lapse of two years to complete : Shalemiller *v.*
McCarty, 55 Pa. St. 188.   The owner's title is not divested
until the expiration of the two years, and the incidents of
title remain in him.   Up to that time he would not be a tres-
passer if he entered upon the land and cut timber : Coxe *v.*
Wolcott, 3 Casey 154 ; Gault's Appeal, 9 Id. 98.   It is not
necessary to enter into the question of the analogies between
Sheriffs' and Treasurers' deeds as to the nature of the incep-
tive titles given by the sale.   Whatever similarity there may
have been before the Act of 1815 allowing a redemption, that
Act and the decisions under it have made a radical difference
between them.

Chief Justice MERCUR delivered the opinion of the court,
October 27th, 1884.

The title acquired by a purchaser of lands at sheriff's sale, differs very much from one which a purchaser takes in unseated lands on a treasurer's sale for the non-payment of taxes. In the former case, on the acknowledgment and delivery of the deed, the purchaser takes a title as full and perfect as the defendant held the same, and it relates back to the day of purchase. In the latter, the title of the former owner is not fully divested until the expiration of two years after the sale. If the purchaser bids more than the amount of the taxes due on the land and costs, he must give to the treasurer a bond for such excess. The giving of this bond is indispensable to his acquisition of a valid title. The payment to the treasurer of the whole amount of the purchase money, is not an adequate equivalent: Connelly *v.* Nedro, 6 Watts 451; McDonald *v.* Maus, 8 Id. 364. If he gives the bond he has an inceptive title only. At the expiration of two years it may ripen into an absolute title. Until he does give it, he has no title whatever: Woodland Oil Company's Appeal, 1 Pennypacker 480. His title is not vested until he pays the taxes and costs and gives this bond for the surplus: Donnel *v.* Bellas, 10 Barr 341. It is true, he may give it at any time within the two years during which the land is subject to redemption: Burd's Executors *v.* Patterson, 10 Harris 219. If, however, the bond be given on the execution of the deed, or later, the purchaser cannot thereafter, before the expiration of the two years, enter on the land and cut timber, or do any other act affecting the freehold. He would become a trespasser thereby: Shalemiller *v.* McCarty, 5 P. F. Smith 186. During that time, the owner, in the absence of actual possession, has such a constructive possession as to maintain trespass for injury to the freehold: Id.

It is true, the Act of 13th June, 1883, P. L. 89, gives the purchaser of unseated lands at a tax sale a writ of estrepment against the owner or person acting under him, to stay waste prior to a redemption of the land. This Act, however, does not give the purchaser a right to commit waste. It merely restrains the owner for the time being.

The timber in controversy here was not only cut before the passage of this Act, but it was cut before the execution of the surplus bond. The fact that it was afterwards given did not make the title of the purchaser retroactive in the enjoyment of the product of the land: nor did the other facts that the owner failed to redeem and afterwards collected the bond, cause the title of the purchaser as against the owner, to relate back of the giving of the same. As previous thereto he had no title, *ex nihilo, nihil fit.*

As the title which a purchaser takes at an administrator's

[Winlack v. Geist.]

sale of land under order of the Orphans' Court is so dissimilar in point of time, the case of Robb *v.* Mann, 1 Jones 300, is not applicable to the present case.

It follows the learned judge committed no error in granting the compulsory non-suit and in refusing to take it off.

Judgment affirmed.