# Zerbe Township School District et al. v. Thomas et al.

*Richard Henry Klein,* for complainants.
*C. C. Lark* and *Daniel W. Kearney,* for respondents.

(Re North Line Coal Co.)

LARRABEE, P. J. (specially presiding), September 6, 1946.—Plaintiffs filed their bill in equity on September 14, 1945, averring therein that waste was being committed by defendants on certain tracts of coal land that had been purchased by the Commissioners of Northumberland County at county treasurer's sales for unpaid taxes and asked that an injunction be issued restraining the several defendants, among them the North Line Coal Company, from committing waste on said lands, by the mining of coal and the cutting of timber thereon, and removing the same from the tracts; plaintiffs also asked that a receiver be appointed to take charge of any future mining of coal on said lands during this litigation.

An injunction was issued and receiver appointed on September 14, 1945.

## Pleadings

The North Line Coal Company on May 27, 1946, petitioned for a rule on plaintiffs to show cause why

the injunction, as to the lands of petitioner, should not be dissolved and the receiver cease mining operation on said lands. A rule was issued on plaintiffs to show cause why the injunction should not be dissolved as to the said North Line Coal Company and this petition and rule were filed of record on June 1, 1946.

An answer to said petition was duly filed by plaintiffs and a hearing and argument was had on the rule on June 24, 1946, and briefs of law were submitted to the court in July.

In its petition for the rule the North Line Coal Company averred that on September 17, 1945, which was three days after said injunction was issued, it entered into an agreement with the Commissioners of Northumberland County, whereby it paid to the county commissioners the sum of $2,188.65, representing an equal one-fifth instalment of the total taxes in arrears and municipal claims due on these lands, also the current taxes for the year 1945, and costs of sale. In said agreement the North Line Coal Company further agreed to pay the remainder of taxes and municipal claims, in four equal instalments, the first of which is to be paid on or before September 13, 1946, and the remaining three instalments on September 13th of each year for the three succeeding years; and further agreed that the current taxes assessed on said real property for each year during such instalment period, shall be paid before any penalty shall attach thereto.

Said agreement set forth that certain properties assessed as the George Prince tract containing 19.10 acres, the Isaac Zeigler tract containing 11.20 acres, and the Peter Sassaman tract containing 5 acres, all situated in the Township of Zerbe, were sold for seated land taxes due thereon, by the County Treasurer of Northumberland County to the commissioners of said county, on April 29, 1943, and the agreement further recites that these properties have not been redeemed

and that title to them is in the Commissioners of Northumberland County, subject to the right of redemption.

This agreement also provided that the owner, the North Line Coal Company, shall have the right to retain possession of said lands unless it shall default in one instalment payment of redemption money, or shall fail to pay the current taxes for any year as required by the terms of this agreement, and upon default of either or both of said payments, the county commissioners shall have the right to repossess said property and the terms of said agreement shall end. This agreement further provides if the North Line Coal Company shall pay all the instalment payments for the redemption, as well as the current taxes on said properties for each year during the period when said instalments are payable, that the County of Northumberland will then convey to the North Line Coal Company title to the said premises free and clear of all taxes and municipal claims.

This agreement was made under the provisions of the Act of July 28, 1941, P. L. 535.

In their answer filed to this petition plaintiffs, respondents to the rule, admit the North Line Coal Company has paid one fifth of the back taxes, also the current taxes for 1945, on said lands, and the costs of sale, and aver that the remaining four fifths of the back taxes have not been paid; however, respondents deny there has been a redemption of said coal lands in accordance with terms of the Act of July 28, 1941, P. L. 535; and further deny that the North Line Coal Company is the present owner of said lands, and to the contrary aver the title is in the County of Northumberland, which purchased said lands at county treasurer's sale for unpaid taxes on April 29, 1943. Respondents recite the language of section 3 of said act, which provides inter alia:

"The agreement shall further provide for the conveyance of said property to the person with whom the agreement is entered into, *upon final payment of the total amount of said costs, taxes, municipal claims, penalties and interest.*" (Italics supplied.)

Respondents further aver that a deed from the county commissioners reconveying title to said lands cannot lawfully be made until the final payment of the total amount of unpaid taxes has been made and until the total amount is so paid the title to the lands will continue to remain in the County of Northumberland; that there can be no redemption until this final payment of all taxes due his been made. Respondents further aver that plaintiffs, the School District of Zerbe Township and the Township of Zerbe, have an interest in said lands which will continue until all back taxes are paid; that the school district and township have not received all the taxes to which they are entitled from said lands, and until the same are paid in full the said school district and township have an equitable interest in these lands as beneficiaries of the trust created by the purchase by the county commissioners and which hold the lands as trustees for all taxing districts having unpaid taxes assessed thereon.

Respondents, in their answer, aver that under the provisions of section 1 of the Act of July 2, 1937, P. L. 2790, the injunction may not be dissolved without the payment of the full amount of the redemption money and that full redemption means payment of *all* taxes and not by the payment of a single first instalment; that a redemption under the Act of July 28, 1941, P. L. 535, is not effected until *all* taxes are paid and a deed delivered by the county commissioners to the one so redeeming.

Respondents, in their answer, also aver that the agreement entered into between the North Line Coal Company and the Commissioners of Northumberland

County does not contemplate the mining of coal by petitioner on the said lands so long as the legal title to same remains in the County of Northumberland and the full amount of back taxes has not been paid; that until so paid the mining and removal of coal by the company would be considered waste under the provisions of section 1 of the Act of July 2, 1937, P. L. 2790.

Respondents, in their answer, further aver that these lands having been purchased by the county commissioners on April 29, 1943, and the two-year period of redemption provided for by the Act of May 9, 1889, P. L. 141, expired on April 29, 1945, without the North Line Coal Company having redeemed the land, therefore this court had the right, under the allegations in plaintiffs' bill in equity, to appoint a receiver to mine the same on behalf of the County of Northumberland and the taxing districts for which it is trustee; that the right to mine coal under the supervision of the receiver has not been disturbed by the said agreement for redemption and the right to mine these tracts remains in the receiver until there is a full redemption by the payment of all back taxes due thereon. Lastly, respondents pray that the rule shall be discharged at the cost of petitioner.

Counsel filed a stipulation of record that the following shall constitute findings of fact:

### Findings of fact

1. The County Treasurer of Northumberland County duly advertised certain tracts of land in Zerbe Township, Northumberland County, Pa., for sale for unpaid taxes, and the same were purchased by the county commissioners on April 29, 1943. The title of the county to these tracts of land is set forth in the following deeds, recorded in the Prothonotary's office of Northumberland County, from the Treasurer of Northumberland County to the Commissioners of Northumberland County, as follows:

| | | Place of record in the Prothonotary's Office |
|---|---|---|
| John Cowden | 103 acres | Treasurer's Deed Book 1943, p. 71 |
| George Prince | 89 acres | Treasurer's Deed Book 1943, p. 81 |
| Isaac Zeigler | 82 acres | Treasurer's Deed Book 1943, p. 85 |
| Peter Sassaman | 203 acres | Treasurer's Deed Book 1943, p. 80 |

All of the said tracts of land were sold as seated lands.

2. A portion of the said lands sold by the county treasurer to the county commissioners on April 29, 1943, was conveyed as follows:

Great Anthracite Coal Company to Claude Moore, for 35.3 acres, by deed dated May 24, 1940, recorded August 9, 1940, in Deed Book 273, page 658, in the office of the Recorder of Deeds and Mortgages in and for Northumberland County, Pa., for a part of the George Prince, Isaac Zeigler and Peter Sassaman tracts.

The interest of Claude Moore therein was conveyed to Steam Coals, Inc., by deed dated September 5, 1945, and recorded October 8, 1945, in Deed Book 300, page 558, in the Office of the Recorder of Deeds and Mortgages in and for Northumberland County, Pa.

3. A portion of the said lands sold by the county treasurer to the county commissioners on April 29, 1943, was conveyed as follows:

Great Anthracite Coal Company to Henry Dzienkoski, by deed dated February 5, 1940, recorded February 8, 1940, in Deed Book 279, page 603, in the Office of the Recorder of Deeds and Mortgages in and for Northumberland County, Pa., for parts of the George Prince and John Cowden tracts.

The interest of Henry Dzienkoski was conveyed to Webster Yocum, by deed dated June 30, 1943, and recorded July 9, 1943, in the Office of the Recorder of Deeds and Mortgages in and for Northumberland County, Pa., in Deed Book 293, page 17.

The interest of Webster Yocum was conveyed to H. Marshall Reinhardt, by deed dated December 28, 1943, recorded August 28, 1944, in the Office of the Recorder of Deeds and Mortgages in and for Northumberland County, Pa., in Deed Book 294, page 296.

The interest of H. Marshall Reinhardt therein was conveyed to North Line Coal Company, by deed dated August 21, 1945, and recorded October 8, 1945, in the Office of the Recorder of Deeds and Mortgages in and for Northumberland County, Pa., in Deed Book 300, page 558.

4. A portion of the said lands sold by the county treasurer to the county commissioners on April 29, 1943, was conveyed as follows:

Great Anthracite Coal Company to Malvin Beadle, for 44 acres, by deed dated September 5, 1940, and recorded November 12, 1943, in the Office of the Recorder of Deeds and Mortgages in and for Northumberland County, Pa., in Deed Book 298, page 41, for a part of the John Cowden, George Prince and Isaac Zeigler tracts.

The interest of Malvin Beadle therein was conveyed to Webster Yocum, by deed dated November 8, 1943, and recorded November 12, 1943, in the Office of the Recorder of Deeds and Mortgages in and for Northumberland County, Pa., in Deed Book 293, page 303.

The interest of Webster Yocum therein was conveyed to H. Marshall Reinhardt, by deed dated December 28, 1943, and recorded August 28, 1944, in the Office of the Recorder of Deeds and Mortgages in and for Northumberland County, Pa., in Deed Book 294, page 296.

The interest of H. Marshall Reinhardt therein was conveyed to North Line Coal Company, by deed dated August 21, 1945, and recorded October 8, 1945, in the Office of the Recorder of Deeds and Mortgages in and

for Northumberland County, in Deed Book 300, page 558.

5. The County Treasurer of Northumberland County duly advertised certain tracts of land in Zerbe Township, Northumberland County, Pa., for sale for unpaid taxes, and the same were purchased by the county commissioners on January 25, 1945. The title of the county to these tracts of land is set forth in the following deeds recorded in the Prothonotary's Office of Northumberland County, Pa., from the Treasurer of Northumberland County to the Commissioners of Northumberland County, as follows:

| Name of tract | Acreage | Place of record in the prothonotary's office |
|---|---|---|
| John Cowden | 50 acres | Treas. Deed Book 1944, p. 86-E |
| George Prince | 31.5 acres | Treas. Deed Book 1944, p. 86-F |
| Isaac Zeigler | .9 acres | Treas. Deed Book 1944, p. 86-G |
| George Prince | 1.5 acres | Treas. Deed Book 1944, p. 86-H |
| Henry Yoxtheimer | 29 acres | Treas. Deed Book 1944, p. 86-I |
| Isaac Zeigler | 32.1 acres | Treas. Deed Book 1944, p. 86-J |
| Bernard Hubley | ¾ of 296 acres | Treas. Deed Book 1944, p. 86-K |

All of the said tracts of land were sold as unseated land.

6. The said lands sold by the county treasurer to the county commissioners on January 25, 1945, were conveyed as follows:

Philadelphia & Reading Coal & Iron Company to West Line Coal Company, by deed dated December 23, 1939, and recorded in the Office of the Recorder of Deeds and Mortgages in and for Northumberland County, December 26, 1939, in Deed Book 273, page 364.

7. On September 14, 1945, the bill in equity was filed in the above case, naming all of the tracts of land set forth in the foregoing paragraphs of these findings, and an injunction was issued by the court pertaining to the mining of these lands and a receiver was appointed therefor.

8. On September 17, 1945, Steam Coals, Inc., entered into an agreement with the County Commissioners of Northumberland County for redemption by installment payments of its former lands in Zerbe Township, and paid the current taxes for the year 1945 based upon the then existing assessments for the same, and also paid the costs and one fifth of the back taxes.

9. Thereafter, by reason of an assessment appeal, the assessments for the year 1945 on the lands in question, formerly of Steam Coals, Inc., were increased by an order of the Court of Common Pleas of Northumberland County, Pa., dated May 17, 1946, and entered to no. 222, December term, 1945. Thereafter, on May 23, 1946, Steam Coals, Inc., entered into an amended agreement of redemption by installment payments for said lands and paid the additional taxes for the year 1945 in compliance with the order of court increasing the said assessments.

10. On September 17, 1945, North Line Coal Company entered into a similar agreement with the County Commissioners of Northumberland County for redemption by installment payments of a part of its former lands in Zerbe Township, and again on October 8, 1945, it entered into a similar agreement for other lands which it formerly owned in Zerbe Township aforesaid. In both cases the North Line Coal Company paid the current taxes for the year 1945 based upon the then existing assessments for the same, and also paid the costs and one fifth of the back taxes.

11. Thereafter, by reason of an assessment appeal, the assessments for the year 1945 on the lands in question, formerly of North Line Coal Company, were increased by an order of the Court of Common Pleas of Northumberland County, dated May 17, 1946, and entered to no. 222, December term, 1945. Thereafter, on May 23, 1946, North Line Coal Company entered into two similar amended agreements of redemption by installment payments for said lands, and paid the

additional taxes for the year 1945 in compliance with the order of court increasing the said assessments.

12. On September 17, 1945, West Line Coal Company entered into an agreement with the County Commissioners of Northumberland County for redemption by installment payments of its former lands in Zerbe Township, and paid the current taxes for the year 1945 based upon the then existing assessments for the same, and also paid the costs and one fifth of the back taxes.

13. Thereafter, by reason of an assessment appeal, the assessments for the year 1945 on the lands in question, formerly of West Line Coal Company, were increased by an order of the Court of Common Pleas of Northumberland County, dated May 17, 1946, and entered to no. 222, December term, 1945. Thereafter, on May 23, 1946, West Line Coal Company entered into an amended agreement of redemption by installment payments for said lands and paid the additional taxes for the year 1945 in compliance with the order of court increasing the said assessments.

14. All the agreements involved were similar in character to those mentioned in paragraphs 8 and 9, supra, except as to tracts of land and the amounts and the names, and therefore are not made a part hereof.

15. The remaining four fifths of the back taxes on the lands of Steam Coals, Inc., North Line Coal Company and West Line Coal Company have not been paid, and the said coal companies have agreed to pay the same by annual installments as set forth in the agreements.

16. No deed or deeds for the said lands have been given to the said coal companies by the County Commissioners of Northumberland County.

## Discussion

The North Line Coal Company, petitioner for the rule, in asking the court to dissolve the injunction as

to the lands formerly owned by it, contends that as it has entered into a written agreement with the Commissioners of Northumberland County under the provisions of the Act of July 28, 1941, P. L. 535, has paid an equal one fifth part of all taxes in arrears on said lands together with taxes for the year 1945, and costs of sale, and has agreed to pay the remaining four fifths of the unpaid taxes in four equal, annual installments, it has, therefore, effected a redemption of said lands.

The said company further contends that by the agreement, made under the provisions of said Act of July 28, 1941, it is given the right of possession of said lands and such right carries with it the right to mine and remove coal therefrom.

A review of the several acts of the legislature relative to this question as well as the decisions of our appellate courts pertaining thereto convinces us that the position thus taken by the North Line Coal Company is untenable.

An examination of the Act of July 28, 1941, sec. 3, shows that it provides expressly for the situation when a former owner has completed the redemption of the lands under an agreement for installment payments and is entitled to receive a deed of conveyance for the same, as follows:

"The agreement shall further provide for the conveyance of said property to the person with whom the agreement is entered into, *upon final payment of the total amount of said costs, taxes, municipal claims, penalties and interest, as aforesaid.*" (Italics supplied.)

This provision is wholly free of ambiguity and by the use of the terms "final payment of the total amount" clearly shows what the legislature intended should constitute a redemption such as would entitle the former owner to a reconveyance to it of the lands. We do not see how the legislature could have made its intention

any clearer. This intention is shown by section 4 of said act which states "the taxing authorities of said political subdivisions shall *execute and deliver any deeds necessary* to render the redemption authorized by this Act *effective.*" (Italics supplied.)

The legislature had also previously declared the same intention as to what shall constitute a complete redemption of lands purchased at a county treasurer's sale for unpaid taxes, as stated in the Act of July 2, 1937, P. L. 2790. This act provides for the issuing of a writ of estrepement to restrain waste upon such lands and declares as follows:

"Provided, that any such writ may be dissolved, at any time during the period established by law for the redemption of such lands by the owner or owners thereof, upon the payment to the proper party the *full redemption money,* and the payment to the prothonotary of said court, of all costs of such writ." (Italics supplied.)

Here we also have the express authority from the legislature setting forth that the writ of estrepement may be dissolved upon payment of *full* redemption money.

The word "redeem" has been defined as "buying back; a purchase back; a repurchase . . . by paying the amount of the debt, interests and costs": 53 C. J. 665. And in 61 C. J. 1275, it is stated:

"Where land was struck off to the State or County for taxes, the amount required to redeem it is usually the amount of *all* taxes delinquent and unpaid, or *all* taxes for years intervening between the tax sale and the exercise of the right, together with such costs and interest and penalties as the law may require." (Italics supplied.)

In our opinion, further confirmation of this intention that a proper redemption is completed only when all taxes and arrears have been paid by the former owner

is shown in the very recent decision by the Supreme Court of Pennsylvania in the case of Blythe Township School District v. Mary-D Coal Mining Co., 354 Pa. 407, where that court declared (p. 410):

"In the instant case, since the property is still in the hands of the county commissioners, under our law it is not beyond the reach of the taxable, as the court below presumed, and for that reason upon payment of *all the taxes* assessed against the property, the taxpayer has an absolute right to recover his real estate, irrespective of any redemption period. Upon payment of any judgment which may be entered in the present action, credit to that extent must be allowed; and *when all remaining taxes on the real estate are paid by the taxable, he is entitled to redeem his property.*" (Italics supplied.)

And in the recent decision by the Superior Court in Erie Appeal, 159 Pa. Superior Ct. 18, where the question arose as to who was entitled to share in the distribution of the proceeds of a property sold by the county commissioners, that court said, inter alia (p. 21):

"When the commissioners purchased the lot at county treasurer's tax sale in 1937, the county took title to it as trustee for the benefit of the several taxing authorities in proportion to their respective interests. Andrews Land Corporation's Appeal, 149 Pa. Superior Ct. 212, 27 A. 2d 700. The city, the school district, and the county, the taxing authorities concerned, thereupon acquired equitable interests in the lot purchased by the commissioners for unpaid taxes. Act of May 21, 1937, P. L. 787; Act of May 21, 1943, P. L. 282, 72 P. S. sec. 5878a et seq.; Zerbe Township School District et al. v. Thomas et al., 353 Pa. 162, 170, 44 A. 2d 566."

The status of the county as a trustee, under such circumstances, is shown in the late decision in the case of Erie Appeal, supra, as follows (p. 27):

"The status of the county as a trustee, under such circumstances, has been recognized by both the Supreme Court and this court. Zerbe Township School District et al. v. Thomas et al., 353 Pa. 162, 44 A. 2d 566; Andrews Land Corporation's Appeal, supra, 149 Pa. Superior Ct. 212, 27 A. 2d 700. And as we have previously stated, such trusteeship exists until the distribution of the funds received has been made."

Here we have the appellate court declaring that the trusteeship continues until the county collects *all the money* representing the total amount of back taxes and gives a deed conveying title to the party redeeming.

In the light of the foregoing acts and decisions we conclude that the payment of a single installment, representing a one-fifth part of the back taxes of the lands by the North Line Coal Company, does not constitute a valid redemption under the terms of the Act of July 28, 1941, supra. In fact, nothing less than payment of the total amount of the taxes in arrears together with the current taxes assessed on the lands, is required before a proper redemption is effected and the county commissioners placed in position to reconvey title to the former owner.

We are also of the opinion that the right of possession given to the North Line Coal Company under the Act of July 28, 1941, by reason of having entered into an agreement with the county commissioners to repay the amount of back taxes in five equal installments, does not give the said company the right to resume mining and removing coal from said lands.

It would thus appear that the effect of the agreement entered into by the North Line Coal Company with the county commissioners is that it suspended the right of the county to sell these lands during the period the installment payments were to be paid. However, it is also certain that title to said lands continues to remain in the county until all taxes in arrears are paid.

If, as contended for by petitioner, the fact that it is given permission under said agreement to possess these lands also carries with it the right to proceed to mine and remove coal therefrom then the former owner would be permitted to mine said lands intensively and after the payment of a second or third annual installment the coal deposits could be greatly depleted or exhausted and, in the event of the failure to pay the remaining installments, possession would again revert to the county, and the county would thus have lands rendered practically worthless for further taxing purposes, all this to the great loss to the said school district and township which would thereby be deprived of their just share in the taxes remaining unpaid.

We can hardly avoid the conclusion that if the former owner is thus given the right to mine said lands under the plea of having been allowed the possession of them then he would thereby be invested with practically all the rights and enjoyment of absolute ownership, save only the right to convey or mortgage the same. For all intents and purposes it would really amount to the same as though the county commissioners had actually reconveyed the title to him on the payment of a sum less than the total amount of unpaid taxes.

It is quite apparent that the chief value in these coal lands for taxing purposes rests in the amount of the available coal deposits therein, and if such former owner by merely paying one annual installment, or anything less than the total amount of taxes in arrears is given the right to mine coal thereon, he would thus be given the liberty to render these lands practically worthless for taxing purposes and without the county having received the full amount of taxes in arrears.

We cannot believe the legislature ever intended that what would amount to, in the instant case, the right of absolute ownership should be granted under the bare

right of possession permitted under the Act of July 28, 1941.

In the recent decision in Erie Appeal, supra, the Superior Court said (p. 28):

". . . that appellant [City of Erie] obtained an equitable interest in the lot when the county commissioners bought it and the county took title, and as long as appellant's tax remained unpaid the interest of appellant pro tanto continued. . . .

"The existence of the *equitable interest* created at an earlier date, determined the right to participate in the proceeds of sale. The *equitable interest* of appellant came into being at the time the county commissioners purchased the lot at tax sale and the county acquired legal title; and this *equitable interest* was protected during the existence of the trusteeship." (Italics supplied.)

We are of the opinion that the said school district and township are interested persons in this matter, that they have a contingent interest, within the meaning of the Act of June 8, 1891, P. L. 208, also an *equitable* interest therein, and these districts must look to the value of these county owned lands for the raising of taxes for the annual upkeep of the township schools as well as township roads and property. In fact, this interest of a taxing district in such lands by reason of the right to levy taxes on them is an interest so inherent and real that the owner may be entirely divested of his title on a sale for nonpayment of taxes. Therefore, we are of the opinion that this vital and inherent taxing interest in the lands brings the said school district and township within the reasonable interpretation of the term *contingent interest*.

Therefore, in the light of the foregoing we conclude that plaintiffs in the original bill in equity, to wit, the School District and Township of Zerbe have a contingent interest in said coal lands and were, under

the Act of June 8, 1891, clothed with proper authority to apply to this court for an injunction to restrain waste on said coal lands, legal title to which is in the County Commissioners of Northumberland County.

In plaintiffs' original bill in equity it is averred that waste was being committed on lands of the North Line Coal Company after title to the same had passed to the Commissioners of Northumberland County. The North Line Coal Company has never filed an answer to plaintiffs' bill and never denied that it had committed waste on said lands; therefore this averment remains undenied on the record and we must accept it as being true for the purpose of passing on the question of whether petitioners were committing waste or permitting it to be done on such lands.

Counsel for petitioner in support of its contention cites three cases, to wit: Shalenmiller v. McCarthy et al., 55 Pa. 186; Woodland Oil Co. v. Shoup, 107 Pa. 293, and Easton v. Sulkin et ux., 19 D. & C. 152. However, upon an examination of these decisions we are of the opinion they are clearly distinguishable from the facts in the case at bar. In the case of Shalemiller v. McCarthy, supra, unseated land was sold for taxes and the purchaser entered upon the tract before the two-year statutory period for redemption had expired and cut timber and it was held the owner could sue to recover the amount of the timber. We think the decision in that case has no application to the facts before us for in the case at bar it is admitted that the lands were purchased by the county commissioners at a tax sale on April 29, 1943, and the statutory period for redemption had expired on April 29, 1945, at which time an absolute title vested in the county commissioners. Furthermore, there is a distinction between the rights of a stranger who purchases lands at a county treasurer's sale and the rights of the county commissioners as such purchaser.

In Woodland Oil Co. v. Shoup, supra, one purchased unseated timber lands at a treasurer's tax sale but did not execute the required surplus bond until nearly two years after said sale. In the meantime a third party, under a contract with the former owner of the land, which contract was made between the date of the sale and the execution of the surplus bond, proceeded to cut timber on the land. The former owner failed to redeem within two years and in an action by the purchaser at the tax sale against the third party for cutting the timber a nonsuit was entered.

Both of the above cited cases practically turn on the point of whether or not there was a redemption of said lands, and a stranger who bought the lands at county treasurer's sale could not cut timber until after the expiration of the statutory redemption period.

In Easton v. Sulkin, supra, there was a citation issued for possession under the Act of 1905 following a *sheriff's sale* on a municipal lien filed under the Act of 1923. It appears obvious that this question is quite different than the question of what rights arise under a county treasurer's sale for unpaid taxes. In Easton v. Sulkin the only question raised was one of possession.

There is ample authority to show that when the Commissioners of Northumberland County purchased the lands in question they became trustees of said land for the benefit of the said taxing districts and therefore their legal status is quite different from that of a stranger who was a purchaser at county treasurer's sale, for it is obvious that such stranger does not occupy the status of a trustee for the said taxing districts.

In the Estrepement Act of July 2, 1937, P. L. 2790, it is expressly provided that when waste has been committed on lands sold by the county treasurer for unpaid taxes and an injunction has issued restraining waste

thereon that such writ of estrepement, or injunction, may be dissolved by the owner of said land paying *the full redemption money* as well as the costs of the writ. Here we have express authority from the legislature that by clear implication shows that the injunction should not be dissolved until the full amount of the taxes in arrears has been paid.

As to the right of the county commissioners or, as in the instant case, an officer appointed by the court, to wit, a receiver, to mine said lands, the Act of April 21, 1937, P. L. 328, and the Act of July 1, 1937, P. L. 2616, expressly provide that "The Board of Commissioners may sell or lease either as lessor or lessee any real property belonging to the county." Therefore it is obvious that under the authority conferred by these two acts the Commissioners of Northumberland County had the right to lease said lands and with such right necessarily would go the usual incident of tenancy, to wit, that of occupancy and right of possession. We also point out that petitioner did not make the agreement with the county commissioners until three days after the receiver was appointed—therefore petitioner was not in possession when the receiver took charge.

The lands in question formerly owned by the North Line Coal Company having been purchased by the county commissioners at a tax sale on April 29, 1943, and the two-year statutory period for redemption of same having expired on April 29, 1945, an absolute title to said lands thereby vested in the County of Northumberland subject only to the right of such extended period of redemption as provided in the Act of 1941. Furthermore, these lands of the North Line Coal Company were assessed, taxed and sold as *seated* lands, therefore we feel that the very recent decision of the Supreme Court of Pennsylvania in Hunter v. McKlveen et al., 353 Pa. 357 (decided in January 1946) has a direct bearing on the question raised and further

shows that the three cases cited by petitioner do not apply to the case at bar. In Hunter v. McKlveen, supra, the question arose as to who was entitled to the condemnation money paid by the Turnpike Commission of the Commonwealth of Pennsylvania in building a highway through lands purchased by the county commissioners at a treasurer's tax sale. This condemnation for highway purposes was made by the State of Pennsylvania during the two-year statutory period for redeeming same, but the former owner made no redemption during this two-year period. The Supreme Court held that by waiting until after the two-year period had expired the former owner was not entitled to receive this condemnation money even though he paid the back taxes over a year later. In passing on the question of the State's ownership of said land the Supreme Court said (p. 361) :

"At the time of the condemnation title was in the County by reason of the tax sales of June 11, 1934, and June 13, 1938. The right to redeem these lands existed thereafter for a period of two years as provided by the Act of May 9, 1889, P. L. 141. Since title passed conditionally to the County at the time of the tax sale, June 13, 1938, the owners had until June 13, 1940, to pay the taxes and redeem the lands. . . . It was not until February 3, 1942, that the taxes were paid and an attempt made to redeem the property. It was then too late to do so, it was long after the period of redemption fixed in the statute had expired. The money received for the lands from the Turnpike Commission was therefore the property of Westmoreland County, from which source the title to the Turnpike Commission was directly derived. The Blairs lost all interest in the lands when they did not redeem within the statutory period, and for the same reason they never had any claim or right to the condemnation money."

It will be noted that the Acts of July 8, 1885, P. L. 268, and May 9, 1889, P. L. 141, which regulate the procedure where the county commissioners bid in lands for unpaid taxes at a treasurer's sale, apply *to both seated and unseated lands* and provide that upon failure to redeem *within the two-year period* an absolute title is vested in the county commissioners for the use of the county: Brew v. Sharer, 42 Pa. Superior Ct. 89. In the late case of Moeller v. Washington County et al., 352 Pa. 640 (decided October 30, 1945), a county purchased a brewery at tax sale and following the expiration of the two-year period for redemption sold the machinery and fixtures installed on the property. It appears the mortgagee of the former owner of the property brought suit against the county for removing the value of his security, to wit, the brewing equipment and fixtures. The Supreme Court held that the county had become the owner of the property and as such had the right to sell it. In that case the Supreme Court said (p. 643) :

"The county thus became the owner of the 'ground, buildings and machinery' under the tax sale, subject to the plaintiff's mortgage lien. The period for redemption had expired under the terms of the Act of July 8, 1885, P. L. 268, section 3, and the Act of May 9, 1889, P. L. 141, section 1."

Thus these late decisions show very clearly that the county may exercise the rights of absolute ownership over such property purchased at tax sale after the expiration of the two-year statutory period for redemption.

It was argued with considerable force by counsel for respondents to the rule that the recent Act of May 24, 1945, P. L. 945, and which is an amendment to the Seated Land Act of 1931, by implication or inference repeals the Act of July 28, 1941, which pro-

vides for the five annual installments, insofar as *seated* lands are concerned. This latter act provides:

"The right of redemption of lands purchased by the county commissioners shall remain in the real owner of such lands, or other persons interested, for two years after such sale, and such redemption may be accomplished by a payment, within such period, to the county treasurer of first, *all taxes*, interest and costs due thereon at the time of sale, and interest thereon; and also second, the taxes and interest which have been annually levied and charged thereon after the sale, and interest thereon beginning on the first day of January in the year succeeding the year when the respective taxes were levied: . . ."

And section 4 of this later act declared "All acts and parts of acts *inconsistent* with the provisions of this Act are hereby repealed".

Therefore, there is a very pertinent question raised here as to whether or not this act by implication does not repeal the Act of July 28, 1941, as to *seated lands.*

Counsel for petitioner cites the recent decision in Roth Appeal, 159 Pa. Superior Ct. 145, which case is based on the provisions of the said Act of July 28, 1941. The opinion in that case does not disclose whether the lands were seated or unseated and that question was not raised before the Superior Court. The decision turned on another point and we are of the opinion that the principle in Roth Appeal does not apply to the facts in the case at bar nor may it be considered as taking a position contrary to the provisions of said Act of May 24, 1945.

It would appear upon a careful reading of this amended Act of May 1945 that by inference it may in effect repeal the five-year period allowed by the Act of 1941 for redeeming *seated lands.*

The Act of June 8, 1891, P. L. 208, provides that any person having a contingent interest in any

real estate in this Commonwealth and not being in possession of the same, it shall be lawful for him to commence and prosecute any suit or suits at law or in equity to prevent the commission of waste to such real estate, . . . in the same manner and form as they might or could do were such interest vested in the person or persons having such interest in actual possession of the land.

"That before any suit at law or equity is commenced, the said person or persons having such contingent interest, shall apply to the court of common pleas of the county where such land or part of the same is situated, for the appointment of some suitable person to take and receive any and all moneys that may be so received in any suit or suits, . . . which person shall . . . give such bond with such sureties as may be approved by said court, and shall hold any and all such moneys received as aforesaid, subject to the orders of said court."

In the light of the authorities cited and for the reasons hereinbefore stated, we conclude that the injunction issued on September 14, 1945, restraining any further commission of waste or mining of coal on the land of the North Line Coal Company should not be dissolved.

As to the contention of petitioners that the receiver should cease further operations on said land we are confronted with the situation where, under the terms of its agreement with the Commissioners of Northumberland County made in accordance with the provisions of the Act of July 28, 1941, said petitioner thereby became entitled to possession of said lands, and we are of the opinion that it would be incompatible for both petitioner and receiver, Mr. O'Rourke, to remain in possession of said lands, therefore we conclude the receiver should cease further mining operations on the said lands of petitioner and withdraw from the same.

In passing on this question we are mindful of the order in this case made by the Supreme Court of Pennsylvania on October 1, 1945, to wit:

"That all injunctions or appointments of receivers heretofore entered or made by the Court below are to remain undisturbed until further Order of this Court."

It will be noted that this order, while it states that the appointment of the receiver by this court shall remain undisturbed, nevertheless it does not state that this court may not withdraw the receiver from mining on certain of the lands described in plaintiffs' original bill in equity, if it appears to the court there may be a good reason to so direct. Therefore, in directing that the receiver shall cease further mining operations on the lands of the North Line Coal Company and withdraw from the same we feel it is permissible under the terms of said order.

It appears from the agreement entered into by petitioner with the county commissioners on September 17, 1945, that in the closing paragraph it states the said "owner" (the petitioner—a corporation) "covenants that said agreement shall bind its heirs, executors and administrators", whereas it should read "its successors and assigns".

### Conclusions of law

The court makes the following conclusions of law:

1. The payment to the County Commissioners of Northumberland County by petitioner herein of the first annual installment for taxes due and in arrears on said lands, together with the payment of the current taxes for the year 1945, and costs of sale, does not constitute a redemption of the said lands within the meaning of the Act of July 28, 1941, P. L. 535.

2. Before said lands may be lawfully redeemed under the provisions and conditions of said Act of July 28, 1941, the total amount of all five annual installments

together with payment of the current taxes levied for each of the five years, plus costs of sale, must be paid to the county commissioners.

3. By the county treasurer's tax sales of April 24, 1943, and January 29, 1945, and the delivery of the treasurer's deeds to the Commissioners of Northumberland County, the county became the owner of said lands, subject only to the right of redemption by petitioner herein.

4. Under the Act of June 8, 1891, P. L. 208, anyone having a contingent interest in seated lands and not being in possession of the same has a right to apply for an injunction to stop the committing of waste therein, while title remains in the County of Northumberland.

5. The School District of Zerbe Township and the Township of Zerbe have such contingent interests in these said lands.

6. The said school district and township also have an equitable interest in said lands. (See Erie Appeal, 159 Pa. Superior Ct. 18.)

7. As no answer was ever filed by petitioner for the rule to the averments contained in plaintiffs' original bill in equity charging that the North Line Coal Company was committing waste, or permitting it to be done, on said lands, and as this averment remains undenied on the record, we conclude that waste was committed by the North Line Coal Company, as complained of in plaintiff's bill.

8. Under the provisions of the Estrepement Act of July 2, 1937, P. L. 2790, the term "waste" shall be construed to mean: ". . . the quarrying and mining of coals or other minerals, whether in new or existing quarries or mines". Therefore, by mining coal on said lands after title had passed to the Commissioners of Northumberland County and without any redemption having been made by petitioner herein down to the date

the injunction was issued, such act constituted waste, and such as could properly be restrained by the writ of estrepement or by an injunction.

9. Either the writ of estrepement, under the Act of July 2, 1937, or an injunction issued by a court of equity may be used to restrain waste. (See School Dist. of Zerbe Township v. Thomas et al., 353 Pa. 162.)

10. Petitioner for the rule does not gain the right to mine and remove coal from said lands by merely paying the first of five annual installments together with current taxes and costs of sale. Nothing less than the payment of the full amount of such taxes in arrears together with the current taxes accrued during the period of paying said installments will entitle them to such right.

11. The legal title to said lands remains in the County of Northumberland until they are lawfully redeemed by the payment of all taxes in arrears, as well as the current taxes, assessed and levied thereon.

12. Petitioner is without a legal justification to ask the court to have the injunction, issued on September 14, 1945, dissolved as to its lands.

### Decree nisi

And now, September 6, 1946, upon consideration of the foregoing case it is ordered, adjudged and decreed that the rule issued on the School District of Zerbe Township and the Township of Zerbe, to show cause why the injunction issued on September 14, 1945, should not be dissolved as to the lands of said petitioner, the North Line Coal Company, is discharged at the cost of petitioner for the rule.

It is further ordered and decreed that Edward J. O'Rourke, the receiver appointed by this court, shall cease forthwith all mining operations conducted by him on the lands of the said North Line Coal Company, and withdraw his agents and employes from the same.

*Opinion sur exceptions*

(North Line Coal Co. et al.)

PER CURIAM, May 12, 1947.—Plaintiffs filed their bill in equity on September 14, 1945, averring therein that waste was being committed by defendants on certain tracts of coal land that had been purchased by the Commissioners of Northumberland County at county treasurer's sales for unpaid taxes and asked that an injunction be issued restraining the several defendants, among them the North Line Coal Company, from committing waste on said lands, by the mining of coal and the cutting of timber thereon, and removing the same from the tracts; plaintiffs also asked that a receiver be appointed to take charge of any future mining of coal on said lands during this litigation.

An injunction was issued and receiver appointed on September 14, 1945.

The North Line Coal Company, on May 27, 1946, petitioned for a rule on plaintiffs to show cause why the injunction, as to the lands of petitioner, should not be dissolved and the receiver cease mining operation on said lands. A rule was issued on plaintiffs to show cause why the injunction should not be dissolved as to the said North Line Coal Company and this petition and rule were filed of record on June 1, 1946.

An answer to said petition was duly filed by plaintiffs and argument was had on the rule on June 24, 1946.

The North Line Coal Company, in its petition for the rule, avers that on September 17, 1945, three days after this injunction was issued, it entered into an agreement with the Commissioners of Northumberland County whereby it paid the first equal one-fifth annual installment of the total taxes in arrears, municipal claims and current taxes for the year, together with

costs of sale on these lands, and agreed to pay the remainder of all such taxes and claims in four equal annual installments, together with the current taxes assessed each year during said installment period.

The North Line Coal Company further avers, in its petition, that the agreement entered into with the County of Northumberland recites that these various tracts of land *have not been redeemed,* and that the title to them is in the Commissioners of Northumberland County, "subject to the right of redemption". The North Line Coal Company further avers that under this agreement possession of said lands was given to it by the county commissioners.

Plaintiffs, respondents to the rule, in their answer filed to defendant's petition for the rule, admit that defendant company has paid one fifth of the back taxes, also the current taxes for 1945 on said lands, but denies there has been a redemption of these coal lands in accordance with the terms of the Act of July 28, 1941, P. L. 535, and avers that title to the same remains in the County of Northumberland, which purchased said lands at county treasurer's sale for unpaid taxes, on April 29, 1943, and further answers that the county commissioners cannot lawfully reconvey title to these lands to defendant until the final installment of unpaid taxes is paid, and that until the final payment is made there can be no redemption. Plaintiffs further aver that until all the taxes are paid in full by the North Line Coal Company, the said school district and township continue to have an equitable interest in these lands as beneficiaries of the trust created by the purchase by the county commissioners, who hold the lands as trustees for all taxing districts for unpaid taxes assessed thereon.

Plaintiffs, in their answer, further aver that under the provisions of the Act of July 2, 1937, P. L. 2790, the injunction may not be dissolved until the full re-

demption money has been paid of all taxes due on said lands; also that the said agreement entered into between the North Line Coal Company and the Commissioners of Northumberland County does not contemplate the permission to mine coal by defendant on said lands as long as the legal title to the same remains in the County of Northumberland, and the full amount of back taxes has not been paid, and that until such back taxes are paid the mining and removal of coal by defendant company would be considered waste under the provisions of section 1 of the Act of July 2, 1937, supra.

On September 6, 1946, the court filed an opinion in which it discharged the rule and directed that the receiver appointed by the court should cease forthwith from mining operations on said tract of the North Line Coal Company. In this opinion the court, in support of its position taken in discharge of the rule, stated that where waste or mining of coal was committed on said lands it can be enjoined until the full amount of the redemption money has been paid.

Exceptions were filed to this adjudication and were heard by the court en banc before the Hon. Don M. Larrabee, specially presiding, and Hon. Robert M. Fortney, P. J. The exceptions, being interrelated, will be discussed together.

The injunction issued in this matter, on September 14, 1945, was issued under the authority of the provisions of the Act of June 8, 1891, P. L. 208, and the Act of July 2, 1937, sec. 1, P. L. 2790.

Before discussing the authorities and reasons for our action in refusing to dissolve this injunction, we point out that the Supreme Court of Pennsylvania, on October 1, 1945, when this matter first came before that court on an appeal under the Act of 1925, raising the question of jurisdiction, made the following order:

"That all injunctions or appointments of receivers heretofore entered or made by the court below are to remain undisturbed until further Order of this Court."

The Act of July 2, 1937, supra, after providing that an interested person may present his petition, setting forth that waste is being committed on said lands purchased by county commissioners at a treasurer's sale for taxes, expressly provides that such injunctions may be dissolved at any time during the period established by law for the redemption of such lands by the owner thereof, upon the payment to the proper party of the *full redemption money*, as well as all costs of the writ of injunction. This same act further declares the term "waste" as used in this act, shall be construed to mean and include "the spoil or destruction done or permitted to lands, houses, gardens, trees, or other corporeal hereditaments, *including the quarrying and mining of coal* or other minerals, whether in new or existing quarries or mines, and all such other acts as will do lasting injury to the premises". (Italics supplied.)

Further authority for issuing of this writ of injunction is found in the Act of June 8, 1891, P. L. 208, which provides that:

"It shall be lawful for any person or persons having a contingent interest in any real estate in this Commonwealth, and not being in possession of the same, to commence and prosecute any suit or suits at law or in equity to prevent the commission of waste to such real estate, or to recover damages for waste committed or injury done to such real estate, in the same manner and form as they might or could do was such interest vested and the person or persons having such interest, in actual possession of the same."

The appellate courts of Pennsylvania have held that where a county buys land at treasurer's sales for taxes, the county holds such lands as trustee for the several taxing authorities concerned and that the interest of

the taxing district is an equitable interest in such lands. In view of this ruling, we are of the opinion that an equitable interest and a contingent interest are the same in nature and principle, and therefore such an interest in these lands as justly entitles plaintiffs to petition for a writ of injunction to restrain waste and stop the mining of anthracite coal by defendants, as the Act of July 2, 1937, P. L. 2790, expressly authorized the issuing of a writ of estrepement, which writ is like an injunction in its nature and effect. (See Zerbe Township School District v. Thomas, 353 Pa. 162, 168.) The same act further provides that such writ of injunction may be dissolved at any time during the period established by law for the redemption of such lands by the owner or owners thereof, upon the payment by the proper party of the *full* redemption price, together with the costs of the writ. Here we have the express authority of the legislature that the injunction may be dissolved upon the sole condition that the former owner pay the *full redemption money*. (Italics supplied.) By plain implication, this act also, in effect, declares that until such full redemption money is paid, an injunction issued under authority of this act shall remain undisturbed and in full force and effect.

In a very recent decision in Blythe Township School District v. Mary-D Coal Mining Co., 354 Pa. 407, 410, that court declared:

"In the instant case, since the property is still in the hands of the county commissioners, under our law it is not beyond the reach of the taxable, as the court below presumed, and for that reason upon payment of *all the taxes* assessed against the property, the taxpayer has an absolute right to recover his real estate, irrespective of any redemption period. Upon the payment of any judgment which may be entered in the present action, credit to that extent must be allowed; *and when all remaining taxes on the real estate are*

*paid by the taxable, he is entitled to redeem his property."* (Italics supplied.)

Defendant, North Line Coal Company, relies on the Act of July 28, 1941, P. L. 535, as authority for its contention that by paying the first of the five annual installments of all taxes accrued against said lands, together with costs and the taxes assessed for the current year, that this in itself, is, in effect, a redemption of said lands. However, reference to that act, in section 3, plainly shows that redemption was not to take place until final payment of taxes was made. This part of the section reads as follows:

"The agreement shall further provide for the conveyance of said property to the person with whom the agreement is entered into, *upon final payment of the total amount of said costs, taxes, municipal claims, penalties and interest, as aforesaid, and the payment of all current taxes, as aforesaid."* (Italics supplied.)

This provision is wholly free of ambiguity, and by the use of the term, "final payment of the total amount" clearly shows what the legislature intended should constitute a redemption such as would entitle the former owner to a reconveyance to him of the lands. We do not see how the legislature could have made its intention any clearer. This intention is further shown by section 4 of the said act, which states: "Taxing authorities of said political subdivisions shall *execute and deliver any deeds necessary to render the redemption* authorized by this Act *effective."* (Italics supplied.) Here, in words that are too plain to be doubted, the legislature stated what it considered would constitute a redemption by the former owner of such lands. Therefore, in view of the language of the aforesaid statute, we conclude that, in order to have the injunction dissolved and have the right to mine coal on these lands, the said North Line Coal Company must pay the full amount of all costs, taxes and municipal

claims accrued against said lands, and the payment of any less amount does not constitute complete and lawful redemption. The word "redemption" has been defined as: "Buying back; a purchase back; a repurchase by paying the amount of the debt, interest and costs." (53 C. J. 664.)

And, in Volume 61 C. J. 1275, it is said:

"Where land was struck off to the state or county for taxes, the amount required to redeem it is usually the amount of *all taxes* delinquent and unpaid, or all taxes for years intervening between the tax sale and the exercise of the right, together with such costs and interest and penalties as the law may require." (Italics supplied.)

In addition to the above cited statutes and decisions, relative to the right to issue an injunction and what constitutes a proper redemption of lands purchased by the county commissioners at county treasurer's sale, we also feel there is another important principle of law to be invoked here in further support of our conclusion that, under the Act of July 28, 1941, supra, the legislature did not intend to give such former owners the right to enter upon said lands and proceed to mine coal therefrom, for his own account, merely because possession was given.

It has been decided in Andrews Land Corporation's Appeal, 149 Pa. Superior Ct. 212, and in Lackawanna County Appeal, 157 Pa. Superior Ct. 137, that the county held the lands which the commissioners had purchased at the county treasurer's tax sale *as trustee for the benefit of all taxing authorities concerned*. This is cited with approval, in the very recent decision in Zerbe Township School District v. Thomas, 353 Pa. 162. If, under these decisions, the county holds these lands as trustee for the benefit of the several taxing districts, then the lands so held comprise a trust estate,

which the county is duty bound to faithfully administer. We are of the opinion that if defendant company, under the guise of obtaining possession of these lands by the mere payment of one installment, under the Act of July 28, 1941, supra, can proceed to mine coal thereon, then the county, as such trustee, is not properly administering its trust but to the contrary, it would be opening the door for defendant company to proceed to mine valuable anthracite coal and thereby deplete and even exhaust the available coal deposits, and without completing the payment of the full five annual installments. By so doing, the county would prove unfaithful to the trust imposed upon it.

It is obvious that the paramount duty of a trustee is to preserve the trust estate, prevent waste and mismanagement, so that the ultimate objects of the trust may be carried out, to wit, in the instant case, in the event of failure of the former owner to pay all five installments of the taxes in accordance with the provisions of the Act of July 28, 1941, P. L. 535, that the land shall revert to the county for the benefit of the taxing districts, with its value unimpaired, for taxing purposes.

As further answer to the contention of defendant that by payment of the first of these five annual installments under the provisions of the said Act of July 28, 1941, supra, it has the right to mine coal therefrom without any responsibility or liability to the county for royalties on such coal mined and removed, we point out that it is a matter of common knowledge in the coal regions of Pennsylvania that by the use of modern strip-mining machinery, consisting of huge power shovels, it is possible, within a period of one or two years, to practically exhaust the available coal deposits found in tracts of the acreage involved here.

Therefore, if such former owner, upon the payment of the first of these five installments, is granted this privilege of mining coal, he could thus deplete or exhaust the available coal deposits on said lands and then, by failing or refusing to pay the remaining installments due, leave the county in the position of having to take back these lands, practically valueless, for future taxing purposes and to the detriment of the taxing authorities, to wit, Zerbe Township School District and Supervisors of Zerbe Township. We cannot believe the legislature ever intended any such result.

We feel it is also significant to note the Act of July 28, 1941, supra, expressly provides in section 2 that the agreement entered into between the county commissioners and a former owner entitled to redeem, shall be *in the nature of a lease.* Therefore, it follows that the agreement giving possession to the former owner upon payment of the first of these five installments was not to give him the status of an owner with the right and enjoyment of absolute ownership, but rather, his legal status was to be that of a *tenant.* We believe this is a fair interpretation of this act and it is obvious that no tenant is given the right to deplete or injure or destroy the premises which he holds under a lease. To the contrary, it is horn-book law that a tenant shall so use the premises that they may be restored to the lessor at the end of the term in like condition as he received them, reasonable wear and tear excepted.

Defendant further contends that the possession given here is like unto that of one who is given possession of a farm or house for residence. It is readily apparent that that situation is not analogous to the instant case where the land is underlaid with coal and is valuable primarily for the purpose of mining said coal. In the case of a farm, the tenant would simply take possession and work the farm for its crops, and if he failed

to pay all of the five installments under the Act of July 28, 1941, the owner would repossess the farm in practically its original physical condition and value. This same reasoning also applies to a tenant who is given possession of a house under the five-year installment agreement as set forth in the said Act of July 28, 1941, supra.

We feel it is pertinent to point out that the Act of July 28, 1941, P. L. 535, which provides that possession of the land shall be given to the former owner upon paying the first of five annual installments of the accrued taxes, liens and costs, does not repeal or modify the terms of either the Act of June 8, 1891, P. L. 208, or the Act of July 2, 1937, P. L. 2790, under which the injunction, in the instant case, was issued, and the said Act of July 28, 1941, P. L. 535, is also silent on the effect of an injunction restraining the commission of waste which is in force at the time the possession of the land is thus given to the former owner under the provisions of said act, and we make the following

## *Final order*

And now, May 12, 1947, the exceptions filed in this case are dismissed and it is ordered and decreed that defendant, North Line Coal Company, shall not be permitted to mine any of the coal deposits on said land until the entire amount of delinquent taxes, municipal claims and penalties and interest accrued thereon, charged against the said property, shall be paid, together with the current taxes assessed on the said property for each year.

It is further ordered and decreed that the order of this court, under date of September 6, 1946, directing that Edward J. O'Rourke, the receiver appointed by the court, shall cease forthwith all mining operations conducted by him on the lands of North Line Coal Com-

pany and withdraw his agents and employes from the same, shall continue in full force and effect. The decree nisi is affirmed.

NOTE.—An appeal from the foregoing decision was quashed as interlocutory on December 5, 1947.